```
                UNITED STATES DISTRICT
                NORTHERN DISTRICT OF ILLINOIS
                     EASTERN DIVISION

ALVARO ALEMAN, IDOC #: R-72385      )
                                    )
               PLAINTIFF            )    CASE NO. 09 C 6049
                                    )
v.                                  )
                                    )    JUDGE ROBERT M. DOW JR.
                                    )
THOMAS DART, in his official capacity )
as Sheriff of Cook County, Illinois )
AVERY HART, in his official capacity )
as Medical Director, Cook County    )
Dept of Correction                  )
COOK COUNTY, ILLINOIS               )
DAVID FAGUS, in his official capacity )
as Chief Operating Officer of Cermak )
Health Service                      )
               DEFENDANTS           )
```

### FIRST AMENDED COMPLAINT

Plaintiff Alvaro Aleman (Aleman), on his behalf, pro se, for his First Amended Complaint against defendants Thomas Dart, the Sheriff of Cook County; Cook County, Illinois; Avery Hart, Medical Director of the Cook County Dept. of Corrections (CCDOC); David Fagus, Chief Operating Officer of Cermak Health Services (collectively, the Defendants) states:

### NATURE OF ACTION

1. Aleman brings this First Amended Complaint pursuant to the Eighth Amendment to the Constitution of the United States and the Civil Rights Act, Title 42, Section 1983 (Section 1983). This Section 1983 case concerns the serious injuries Aleman incurred as a result of Defendants failure to provide medical treatment to Aleman and deliberate indifference to Alemans serious medical needs. Aleman injured himself due to a fall on the stairwell, braking his left hand middle finger and his injury worsened due to lack of tratment, disregard of his developing infections and other inaduquate medical care and attention. Aleman's untreated injury has resulted on a life-long handicap of his left hand.

Aleman suffered signifiant injury and unnecessary and wanton infliction of pain. Aleman seeks to redress his wrongs and damages suffered as a result of the Defendants wrongful acts or omissions and seeks monetary damages and other relief that the Court deems eqitable and just.

## PARTIES

2. Aleman is an individual who, at all times relevant to his action, resided in the State of Illinois. Aleman currently reisdes at the Shawnee Corr. Center in Vienna, Illinois.

3. Defendant Thomas Dart is the Cook County Sheriff. Defendant Dart is responsible for the operations and administration of the CCDOC, including but not limited to: (a) Supervising the policies, customs and regulations of the CCDOC; (b) Protecting the safety and health of inmates, including ensuring that CCDOC Medical Director and Chief Operating Officer of Cermak Health Care take reasonable measures to provide adequate medical aid. (c) Ensuring that sick and injured inmates are provided prompt and appropriate medical treatment. Defendant Dart is also the Warden of the CCDOC. Defendant Dart is responsible for the operation of the CCDOC, including the overall management of the CCDOC and it's inmates, personal programs and activities, and administrative functions, as well as the oversight of day-to-day operations. He is also responsible for supervising the policies, customs and regulations of CCDOC and the safety and well-being of inmates, including ensuring that the CCDOC Medical Director and the Chief Operating Officer of Cermak Health Care take reasonable measures to provide inmates adequate medical aid. Defendant Dart is also responsible for ensuring that inmates are treated properly and provided prompt medical treatment. Defendant Dart's responsibilities also include implementing and enforcing policies for the Medical Director and Chief Opperating Officer of Cermak to ensure and provide a humane and acceptable medical treatment and care in terms of modern medicine and technology.

4. Defendant Cook County is the employer of all other named defendants at all times relevant to this complaint. Defendant Cook County is a local public entity under the laws of the State of Illinois, is liable to indemnify Defendant Dart and potentially liable to indemnify all other defendants, and therefore is an indispensable party pursuant to Fed.R.Civ.P.17 and 19.
Cook County was named as a defendant on plaintiffs original complaint but it was "dismissed as a party to this suit" See Docket Entry Text, STATEMENT page 2 (preliminary review of the complaint). However, Pursuant to a recent 7th Circuit Court Opinion it requires its inclusion. See Askew v. Sheriff of Cook County, Illinois, 2009 WL 1361913 (7th Cir 2009). Cook County is responsible for paying any damages if a judgement is entered against any of the defendants. In May 2009, the Seventh Circuit held that Cook County is an indispensable party when a plaintiff sues an elected official, i.e., the Sheriff, in his official capacity.

The Seventh Circuit directed the Trial Court to order the County added as a defendant rather than dismissal of the complaint for failure to name an indispensable party. Therefore, plaintiff respectfully requests that Cook County be restored to this suit as a defendant. Enclosed is the attached preliminary review of the complaint.

5. Defendant Avery Hart is the Medical Director at the CCDOC. Defendant Hart is responsible for medical treatment of prison inmates and the oversight of the administration of medical aid to prison inmates at the CCDOC, including but not limited to: (a) Monitoring the medical conditions of inmates who return from the CCDOC Infirmary or Cermak Health Services; (b) Assesing inmates and determining when they are in need of medical aid; (c) Implemanting, enforcing and overseeing policies to ensure that medical staff provide prompt and appropriate medical treatment to inmates. Defendant Hart has a duty to ensure that inmates receive necessary medical care and treatment.

6. Defendant David Fagus is the Chief Operating Officer of Cermak Health Services (Cermak) and is responsible for the functioning of Cermak. Defendant Fagus is responsible for medical treatment of prison inmates and the oversight of the administration of medical aid to prison inmates at the CCDOC, including but not limited to: (a) Monitoring the medical conditions of inmates who return from the CCDOC Infirmary or Cermak Health Services; (b) Assessing inmates and determining when they are in need of medical aid; (c) Implementing, enforcing and overseeing policies to ensure that medical staff provide prompt and appropriate medical treatment to inmates. Defendant Fagus has a duty to ensure that inmates receive necessary medical care and treatment.

## JURISDICTION AND VENUE

7. This court has jurisdiction over Alemans claims, which arise under the Eighth Amendment to the United States Constitution, and under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391, because a substantial part of the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

Division 6, Unit 1J

9. Aleman resided in CCDOC from Dec 6th, 2006 through Aug 8th 2008. He was housed in Division 6, Unit 1J between Aug 3rd, 2007 and Nov 14th, 2007.

10. There are 20 (twenty) cells in Division 6, 1J. On information and belief, there is a policy to house 2 (two) inmates per cell.

11. On information and belief, the cells in Division 6, 1J form a rectangle around what is known as the "Day-room". There are 2 (two) levels (floors) upper and lower, each level is made up of 10 (Ten) cells. The inmates on the upper level can only access the day-room through a stairway. Aleman resided on the upper level at the time of his injury. The day-room has a television, 3 (three) telephones, 3 (three) tables and access to a bathroom. Each morning, at approximately 7:30 a.m., a guard unlocks the inmates cell doors and allows them access to the day-room. The doors to the cells can be locked and unlocked either manually or automatically by a guard pressing a button located in a seperate office adjoining the day-room where a guard is stationed, watching the inmates through a window.

12. All of the inmates in Division 6,1J, approximately 40 (forty) in each cell is occupied by 2 (two) inmates, usually occupy the day-room each morning from 7:30 a.m. to 1:00 p.m. and from 4:00p.m. to 9:00p.m. Inmates are not handcuffed or otherwise restrained while in the day-room so they are free to move around and interact with each other.

## THE FALL

13. On Oct 18th, 2007, in the early evening hours, Aleman was descending the stairs to gain access to the day-room. He slipped and fell injuring his left hand on the stairwell.

## THE INJURY

14. After obvious injury to his left hand, Aleman was taken to the Emergency Room of Cermak Health Services of Cook County.

## ALEMANS TREATMENT AT CERMAK

15. When Aleman arrived at Cermak he was seen by a physician who recommended X-rays and pain medication.

16. An X-ray technician took X-rays of Alemans left hand and a nurse gave him a tablet containing 14 pain pills. Cermak released Aleman to the guards custody after putting a temporary hand support (cast) disbursing the medicine and taking the X-rays.

17. Aleman was not told he had a severe and serious fracture when he left Cermak on Oct 18th, 2008.

-4-

### Aleman's Return to Cook County Department of Corrections

18. The guards took Aleman back to the CCDOC to his cell in Division 6,1J Division 6,1J is not a special unit for inmates who need medical attention.

19. For the days that follow after Aleman fell on Oct. 18th, 2007, he began experiencing severe pain on his left hand.

20. On Oct 20th, 2007, Aleman was without pain medication. He communicated to the morning guard on duty that he was inpain, to see if he (Aleman) could go to Cermak. The guard called Cermak Health Care and asked if Aleman could be seen for his injury. Shortly after the guard reported to Aleman that Cermak confirmed that he was scheduled for follow up but that he was re-scheduled.

### Aleman Returns to Cermak Hospital for Treatment

21. On Nov 27th, 2007, Aleman arrived at Cermak Health Care and was seen by Doctor Colvard. The Doctor recommended a second X-Ray and prescribed pain medication. Dr Colvard also wrote in the medical report (Progres Notes), that the previous X-Ray of Oct 18th, 2007, reveal "...an oblique fracture of the third proximal phalanx. Slight separation and overriding of the fragments is seen". This information was Electronically signed by the Reading Radiologist Jara,Oscar A. on Oct 23rd, 2007at 9:53 p.m.

22. After the X-Ray technician took the X-Rays and the pain medicine was disbursed, Cermak released Aleman to the guards custody

### Second X-Ray Report reveals Aleman fracture Worsened

23. On Dec 3rd, 2007, the second X-Ray report Electronically Signed at 12:28 p.m. by the Reading Radiologist Jara, Oscar A. informed: "...fracture through the proximal third phalanx. There is about 3.0mm separation and displacement of the fragments..."

### Prescribed Treatment

24. On Dec 12th, 2007, Aleman was taken to Cermak and was seen by Dr Colvard. The Doctor wrote on the "Emergency Room Record" report that Aleman was "...schedule for surgery for Dec. 27th, 2007" and scheduled Aleman for follow up.

25. Aleman did not have the surgery as scheduled. However, on Dec 29th, 2007 on a Consultation Request Form marked "URGENT" by medical staff at Cermak, Aleman was "referred to John Stroger Hospital Hand Clinic for surgery."

### Doctor Urges Treatment

26. On Jan 11th, 2008, Aleman was taken to Cermak and was seen by Dr Colvard. In his medical report, Dr Colvard wrote that Aleman "...was supposed to have surgery to his left middle finger", that his (Aleman) condition "was painful". Dr Colvard wrote also that Aleman was scheduled for his surgery on Dec 27th, 2007 but that "he" (Aleman) "was not called."

27. Furthermore, Dr Colvard strongly and explicityl urged for Aleman to be provided with surgery "ASAP schedule for surgery", "need surgery ".(ASAP is an abbreviation that literately means: as soon as possible). Dr Colvard prescribed more pain medication and some crean for Aleman. A cream to be applied to his fractured area and schedule for follow up. After disbersing the medicine, Cermak released Aleman to the guard's custody.

28. Aleman was seen on Jan 25th, 2007 and was rescheduled. On Jan 31st, 2007 Aleman was seen again. The Consultation form report notes that Aleman was "...scheduled for surgery but he was not called.", "...continues pain and loss of motion" of his left middle finger. Aleman was again referred to John Stroger Hospital Hand Clinic.

29. On Feb 21st, 2008, Aleman was taken to Cermak. The Consultation Form notes Aleman's "...finger significant stiffness." And reschedule Aleman for follow up.

### Aleman Pleads for Medical Care

30. On Feb 27th, 2008, with the assistance of a Spanish and English speaking inmate, Aleman filled a Detainee Health Service Request Form, complaining that it had been five (5) months since he had broken his finger, that he had contracted an infection on two (2) fingers, that puss-like fluids were coming out and that he was in a lot of pain. The response to Aleman request for medical care was that he was "...scheduled for March 4th, 2008."

31. On Mar 4th, 2008, Aleman was taken to Cermak on a follow up. He was treated for the infection (drained puss-like fluids) and was prescribed antibiotics and pain medication. After disbursing the medicine Aleman was released to the guard's custody.

32. On Mar 12th, 2008, Doctor Dunlap received an :OFF SITE NOTIFICATION PATIENT PREPARATION AND RETURN" form from John Stroger Hospital informing CCDOC medical staff that Aleman was scheduled for surgery. However, health care staff and jail officials did not made Aleman available for the surgery.

33. On Apr. 1st, 2008, Aleman was taken to Cermak. The medical report notes Aleman's fingers condition as serious and in need of treatment. Aleman was referred to John Stroger Hospital for surgery and was prescribed pain medication

and cream for the fractured area. After disbursing the medicine Aleman was released to the guards custody.

34. On Apr 3rd, 2008, a Consultation Request Form notes that Aleman had broken his finger "...6 (six) months ago, and that Aleman's finger was "...very stiff."

35. On Apr 15th, 2008, Aleman was taken to Cermak on a follow up. The medical report mention Alemans injury.

36. On Apr 26th, 2008, Aleman was finally being prepared for surgery at John Stroger Hospital. He was given a pre-surgery medication and seconds later he suffered a compulsion and went into shock. The surgery was cancelled.

37. Aleman remained at John Stroger Hospital under observation for two (2) days and was then released on the third day to Cook County DOC custody.

### Aleman Return to CCDOC

38. Aleman arrived at CCDOC to his cell in Division 10,3C, (Aleman had been re-classififed, he was no longer in Division 6,1J) Division 10,3C is not a special for inmates who need medical attention.

39. On Apr 29th, 2009, Aleman was taken to Cermak on a follow-up. The Medical Report notes indicate that the surgery was cancelled. The physician asked Aleman what had happened, Aleman's response, quote-unquote, "People were talking to me but I don't understand".

### Aleman's Treatment is Terminated the Surgery Cancelled

40. Aleman was not treated further despite his medical condition and need for medical treatment.

### Alemans Grievance and Complain

41. On or about the 20th of May 2008, Aleman completed a grievance form in connection with the CCDOC and medical staff's failure to provide him with medical treatment. Aleman does not speak English and needed another inmate who was bilingual to assist him in completing the form. Aleman turned in the form to the mailbox where grievance forms were to be delivered, but never received a rsponse to his complaints.

42. Aleman remained at CCDOC until Aug 8th, 2008, and was then transferred to Illinois Dept. of Corrections (IDOC).

43. On Sept 22nd, 2008, Aleman with the assistance of a Spanish and English speaking inmate, wrote and file a complaint in the United States District Court

Northern District of Illinois, containing allegations that various parties violated the Civil Rights Act, Title 42, Section 1983, by delaying and denying him prompt and appropriate medical care and treatment.

### Recognized Pattern of Constitutional Violations

44. On July 11th, 2008, the Civil Rights Division of the United States Dept. of Justice and the United States Attorneys Office reported the findings of a comprehensive 17-month investigation of the CCDOC in a 98 page letter to Cook County Board President, Todd Stroger and Cook County SHeriff, Thomas Dart. The investigation included on-site inspections with expert consultants in corrections and custodial medical care, among other areas. The letter substantiates many of Aleman's claims, including but not limited to his claims regarding: (a) inadequate medical treatment; (b) inadequate medical staffing; (c) inadequate emergency care; (d) inadequate medication administration' and (e) inadequate access to medical care.

### COUNT 1

Eight Amendment Claim Concerning Delay of Medical Treatment in Violation of 42 U.S.C B 1983
Defendants Avery Hart Medical Director, And David Fagus Cheif Operating Officer Direct Liability For Dalay Of Treatment.

45. Aleman restates and re-alleges the allegations set forth in paragraghs 1 through 44 of this First Amended Complaint.

46. On information and belief, the CCDOC has a policy whereby the medical director and cheif operating officer at the CCDOC bear a responsibility for, (a) ensuring that prison inmates receive prompt medical care and treatment; (b) monitoring the medical condition of inmates who return after medical treatment from the infirmary and Cermak Health Care or otherwise have exhibited need for medical aid; and (c) overseeing administration of medical aid to prison inmates.

47. Defendants Hart and Fagus were responsible for Aleman's medical care while Aleman was at the CCDOC and knew or should have known about Aleman's injury, the worsening of his condition and his serious need for medical treatment once Doctor Colvard explicitly advised on Jan 11th, 2008, that Aleman needed surgery "ASAP".

48. Defendants Hart and Fagus breached their duties and violated CCDOC policy by failing to ensure that Aleman received without unnecessary delay the prescribed medical treatment for his injury.

49. Defendants Hart and Fagus were personally involved in the delay of Alemans medical treatment while he was at the CCDOC.

50. Defendants Hart and Fagus deliberate disregard of Aleman's medical condition resulted in further injury and unnecessary and wanton infliction of pain to the Aleman.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgement in favor of Aleman for damages and such other relief as this Honorable Court deems proper.

## COUNT 2
### EIGHTH AMENDMENT CLAIM CONCERNING FAILURE TO PROVIDE MEDICAL TREATMENT IN VIOLATION 42 U.S.C. § 1983

A. Medical Director and Chief Operating Officer- Direct Liability For Failure To Provide Medical Treatment

51. Aleman restates and re-alleges the allegations set forth in paragraghs 1 through 44 of this First Amended Complaint.

52. On information and belief, the CCDOC has a policy whereby the Medical Director and Chief Operating Officer at the CCDOC bear a responsibility for; (a) ensuring that prison inmates receive necessary prompt medical care and treatment; (b) monitoring the medical condition of inmates who return after medical treatment from the infirmary and Cermak or otherwise have exhibited need for medical aid; and (c) overseeing administration of medical aid to prison inmates.

53. Defendants Hart and Fagus were responsible for Aleman's medical care while Aleman was at the CCDOC and knew of or should have known about Aleman's medical need for treatment, that his condition was painful and that if left untreated will cause additional harm.

54. Defendants Hart and Fagus breached their duties and violated CCDOC policy by failing to ensure that Aleman received necessary medical treatment for his injury.

55. Defendants Hart and Fagus were personally involved in Alemans medical care and failed to provide Aleman with the medical treatment prescribed by the Doctor.

56. Defendants Hart and Fagus deliberate disregard of Aleman's medical condition resulted in further injury and unnecessary and wanton infliction of pain to the Aleman.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. ß 1983, enter judgement in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

B. Defendant Thomas Dart- Vicarious Liability For Acts of Subordinates

57. Alemans restates and re-alleges the allegations set forth in paragraphs 1 through 57 of this First Amended Complaint.

58. On information and belief, the CCDOC has a policy whereby the Sheriff (Warden) Thomas Dart, bear responsiblity for ensuring that inmates are treated properly and provide prompt medical treatment.

59. On information and belief, Defendant Dart had overall responsibility to ensure that CCDOC Medical Director and the Cheif Officer of Cermak Health Services took reasonable precautions to respond to inmates serious medical needs and to provide medical treatment.

60. On information and belief, Defendant Dart knew or should have known that inmates repeatedly complained of not receiving medical treatment and that the Medical Director and Cheif Operating Officer of Cermak frequently violated the CCDOC's policy by failing to provide medical treatment.

61. On information and belief, Defendant Dart failed to implement or enforce a policy to ensure that inmates with serious medical needs be provided with prompt medical treatment.

62. Defendant Dart knew or should have known of inmates that required outside treatment, such as Aleman's treatment and surgery.

63. Defendant Dart breached his duty by failing to enforce the policies and adequetely supervise CCDOC Medical Director and Chief Operating Officer of Cermak took reasonable precautions to provide adequate and prompt medical treatment to inmates (such Aleman). Due to his knowledge of CCDOC policy voilations and breaches of duties by the Medical Director and Chief Operating Officer of Cermak, was therefore personally involved in their conduct.

64. As a result of Defendants inaction, Aleman suffered permanent injury.

WHEREFORE, Aleman rspectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. ß 1983, enter judgement in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

C.  <u>Defendant Thomas Dart (Sheriff) - Direct Liability For Violation of CCDOC Policy</u>

65. Aleman restates and re-alleges the allegations set forth in paragraphs 1 through 64 of this First Amended Complaint.

66. On information and belief, the CCDOC has a policy whereby the Sheriff bear responsibility for ensuring that inmates are provided adequate and prompt medical treatment.

67. On information and belief, Defendant Dart, had overall responsibility to ensure that CCDOC Medical Director and the Chief Operating Officer of Cermak Health Services took reasonable precautions to respond promptly to inmates serious medical need and provide medical treatment.

68. On information and belief, Defendant Dart knew or should have known that inmates repetely complained of not receiving medical treatment and that the Medical Director and Chief Operating Office of Cermak Health Services frequently violated the CCDOC's policy by failing to provide medical treatment to inmates with medical needs.

69. On information and belief, Defendant Dart failed to implement or enforce a policy to ensure that inmates with serious medical needs be porvided with propmpt medical treatment.

70. Defendant Dart knew or should have known of inmates that require outside treatment, such as Aleman, the treatment and surgery.

71. Defendant Dart breached his duty by failing to enforce the policies and adequately supervise CCDOC Medical Director and Chief Operating Officer of Cermak took reasonable precautions to provide adequate and prompt medical treatment to inmates (such ALeman). Due to his knowledge of CCDOC policy violations and breaches of duties by the Medical Director and Chief Operating Officer of Cermak, was therefore personally involved in their conduct.

WHEREFORE, Aleman respectfully requests that the Honorable Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. § 1983, enter judgement in favor of Aleman for damages, and such other relief as this Honorable Court deems proper.

## COUNT 3
<u>55 ILCS 5/5-1002 and 745 ILCS 10/9-102 Claim For Liability of Cook County and Indemnification of Cook County "Employees"</u>

72. Aleman restates and re-alleges the allegations set forth in paragraph

1-71 of this First Amended Complaint.

73. Defendant Thomas Dart, the Sheriff of Cook County and Cook County, Illinois, are local public entities as defined in 745 ILCS 10/1-206.

74. All other Defendants were and/or are, at all relevant times, "employees" of Defendant Dart and Cook County, Illinois, as defined by 745 ILCS 10/1-202.

75. Defendant Cook County is liable and responsible for payment of any judgements against, or settlements entered into by Defendant Dart pursuant to 55 ILCS 5/5-1002, Carver V. Sheriff of LaSalle County, 324 F.3d 947(7th Cir.2003) and Askew v. Sheriff of Cook County, Illinois , 2009 WL 136913(7th Cir May 18th, 2009).

76. Defendant Cook County is liable and responsible for payments of any judgements against, or settlements entered into by Defendant Dart and all other.

77. Defendant pursuant to 745 ILCS 10/9-102.

WHEREFORE, Plaintiff demands judgement against the Defendant Cook County in the amounts awarded to Plaintiff against any or all Defendants.

CONCLUSTON

WHEREFORE, Aleman respectfully request that the Honorbale Court declare that the acts and omissions described herein violated Aleman's rights under the Constitution of the United States and 42 U.S.C. B 1983, enter an order awarding:

A. Money damages in an amount to be determined;
B. That Defendants provide plaintiff with a M.D., a board certified orthopedic surgeon specializing in hand surgery to treat injury, that all expenses be covered.
C. An amount of money (to be determined) for future surgery, Physical therapy, and pain medication.
D. Any other relief as this Honorable Court deems just and appropiate.

Respectfully Submitted,
By: /s/ *Alvaro Aleman*

Alvaro Aleman R-72885
Shawnee C.C.
6665 State 146 East
Vienna, Illinois 62995

Dated: January 19 ,2010

UNITED STATES DISTRIC
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Alvaro Aleman - R-72885 )
Plaintiff )
)
vs. ) NO. 09 C 6049
)
Thomas Dart et al. )
Defendant )
)

CERTIFICATE OF SERVICE

To: Clerk of the U.S. District Court
    United States Court House
    219 South Dearborn Street
    Chicago, Illinois 60604

    Anita Alvarez
    States Attorney of Cook County
    500 Richard J. Daley Center
    Chicago, Illinois 60602

The undersigned, having first been sworn under oath, hereby certifies and states that he has placed the aforementioned First Amended Complaint, in the U.S. Mail with proper, prepaid, postage at the Shawnee Correctional Center Vienna, Illinois 62995, on this 19 day of Jan, 2010.

*Alvaro Aleman*
AFFIANT

I.D. NO. R-72885
Shawnee Correctional Center
6665 State Route 146 East
Vienna, IL 62995

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 19 DAY OF Jan, 2010.

*Karen Jones*
NOTARY PUBLIC

OFFICIAL SEAL
J. KAREN JONES
Notary Public - State of Illinois
My Commission Expires Jan 08, 2012

Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 6049 | **DATE** | October 9, 2009 |
| **CASE TITLE** | Alvaro Aleman (R-72885) v. Cook County Dept. Corrections | | |

**DOCKET ENTRY TEXT:**

Plaintiff's motion for leave to proceed *in forma pauperis* [3] is granted. The Court authorizes and orders the Trust Fund Officer at Plaintiff's place of confinement to deduct $11.50 from Plaintiff's account, and to continue making deductions in accordance with this order. The Clerk is directed to mail a copy of this order to the Trust Fund Officer at the Shawnee Correctional Center, and to issue summons for Defendants Tom Dart, David Fagus, and Avery Hart. The United States Marshal's Service is appointed to serve those Defendants. The Cook County Department of Corrections is dismissed as a Defendant. Plaintiff's motion for the appointment of counsel [4] is denied without prejudice. The Clerk shall send to Plaintiff a magistrate judge consent form and filing instructions along with a copy of this order.

■ [For further details see text below.]                                                                 Docketing to mail notices.

## STATEMENT

Plaintiff Alvaro Aleman (R-72885), an inmate at the Shawnee Correctional Center, has filed this 42 U.S.C. § 1983 against Cook County Jail Sheriff Tom Dart, Cermak Health Services Director David Fagus, and Avery Hart, a health care administrator. Plaintiff alleges that he injured his hand in October 2007 while incarcerated at the Cook County Jail, that he was scheduled for a surgery, but that health care and jail officials never made Plaintiff available for his surgery.

The Court finds that Plaintiff is unable to prepay the filing fee and grants his motion for leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 1915(b)(1), Plaintiff is assessed an initial partial filing fee of $11.50. The supervisor of inmate trust accounts at the Shawnee Correctional Center is authorized and ordered to collect, when funds exist, the partial filing fee from Plaintiff's trust fund account and pay it directly to the Clerk of Court. After payment of the initial partial filing fee, the Trust Fund Officer at Plaintiff's place of confinement is directed to collect monthly payments from Plaintiff's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments collected from Plaintiff's trust fund account shall be forwarded to the Clerk of Court each time the amount in the account exceeds $10 until the full $350 filing fee is paid. All payments shall be sent to the Clerk, United States District Court, 219 S. Dearborn St., Chicago, Illinois 60604, attn: Cashier's Desk, 20th Floor, and shall clearly identify Plaintiff's name and the case number assigned to this action. Plaintiff shall remain responsible for this filing fee obligation, and the Shawnee Correctional Center inmate trust account office shall notify transferee authorities of any outstanding balance in the event that Plaintiff is transferred.
(CONTINUED)

isk

### STATEMENT (continued)

Preliminary review of the complaint (see 28 U.S.C. § 1915A) reveals that Plaintiff may proceed at this time against the individual Defendants. The Cook County Department of Corrections, however, is not a suable party or proper defendant and, thus, is dismissed as a party to this suit. *Castillo v. Cook County Mail Room Dept.*, 990 F.2d 304, 307 (7th Cir. 1993).

The Clerk shall issue summonses for service of the complaint on Tom Dart, David Fagus, and Avery Hart. The Clerk shall also send to Plaintiff a Magistrate Judge Consent Form and Instructions for Submitting Documents along with a copy of this order.

The United States Marshal's Service is appointed to serve Tom Dart, David Fagus, and Avery Hart.. Any service forms necessary for Plaintiff to complete will be sent by the Marshal as appropriate to serve Defendants with process. The U.S. Marshal is directed to make all reasonable efforts to serve the Defendants. With respect to any former jail employee who can no longer be found at the work address provided by the Plaintiff, Cook County Jail or Cermak officials shall furnish the Marshal with the Defendant's last known address. The information shall be used only for purposes of effectuating service, or to show proof of service should a dispute arise. Documentation of the address shall be retained only by the Marshal. Address information shall not be maintained in the court file, nor disclosed by the Marshal. The Marshal is authorized to mail a request for waiver of service to Defendants in the manner prescribed by Fed. R. Civ. P. 4(d)(2) before attempting personal service. If a waiver of service is not obtained, the Marshal shall then attempt personal service.

Plaintiff is instructed to file all future papers concerning this action with the Clerk of Court in care of the Prisoner Correspondent. Plaintiff must provide the court with the original plus a complete judge's copy, including any exhibits, of every document filed. In addition, Plaintiff must send an exact copy of any court filing to the defendants, or to their counsel if an attorney enters an appearance on their behalf. Every document filed with the Court must include a certificate of service stating to whom exact copies were mailed and the date of mailing. Any paper that is sent directly to the judge or that otherwise fails to comply with these instructions may be disregarded by the court or returned to Plaintiff.

Plaintiff's motion for the appointment of counsel is denied without prejudice. Plaintiff does not indicate that he sought to obtain counsel or that he was prevented from doing so. Furthermore, the case at the present time does not involve complex discovery or an evidentiary hearing, and Plaintiff's current pleadings indicate that he may proceed with his case at this stage of the proceedings. Accordingly, his motion for the appointment of counsel is denied without prejudice. *Pruitt v. Mote*, 503 F.3d 647, 656-59 (7th Cir. 2007).