**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ALVARO ALEMAN,　　　　　　　　　　　)<br><br>　　　　　　　　Plaintiff,　　　　　　)<br><br>　　　v.　　　　　　　　　　　　　　　)<br><br>THOMAS DART, in his individual capacity;　)<br>THOMAS DART, in his official capacity as　)<br>Sheriff of Cook County, Illinois; SALVADOR　)<br>GODINEZ, in his individual capacity;　　)<br>SALVADOR GODINEZ, in his official capacity　)<br>as Director of the Cook County Department of　)<br>Corrections; AVERY HART, in his individual　)<br>capacity; AVERY HART, in his official capacity　)<br>as Medical Director of Cermak Health Services;　)<br>DAVID FAGUS, in his individual capacity; and　)<br>MICHAEL A. PUISIS in his official capacity as　)<br>Chief Operating Officer of Cermak Health　)<br>Services; COOK COUNTY, ILLINOIS,　　)<br><br>　　　　　　　　Defendants.　　　　)<br>　　　　　　　　　　　　　　　　)<br>　　　　　　　　　　　　　　　　) | Case No. 09 C 06049<br><br>Hon. Judge Robert M. Dow, Jr.<br><br>Magistrate Judge Nan R. Nolan |

## <u>SECOND AMENDED COMPLAINT</u>

Plaintiff, ALVARO ALEMAN ("Plaintiff"), by and through his attorneys, Steven T.

Whitmer, Ernesto R. Palomo, and Ashlee M. Knuckey, for his Second Amended Complaint

against Defendants THOMAS DART, in his individual capacity; THOMAS DART, in his

official capacity as Sheriff of Cook County, Illinois; SALVADOR GODINEZ, in his individual

capacity; SALVADOR GODINEZ, in his official capacity as Director of the Cook County

Department of Corrections; AVERY HART, in his individual capacity; AVERY HART, in his

official capacity as Medical Director of Cermak Health Services; DAVID FAGUS, in his

individual capacity; MICHAEL A. PUISIS in his official capacity as Chief Operating Officer of

Cermak Health Services; and COOK COUNTY, ILLINOIS (collectively, the "Defendants"),

states as follows:

## NATURE OF THE CASE

1.      Plaintiff brings this Second Amended Complaint pursuant to the Fourteenth

Amendment to the Constitution of the United States and the Civil Rights Act, Title 42, Section

1983 ("Section 1983").  This Section 1983 case concerns the serious harm, pain and suffering

Plaintiff has incurred as a result of Defendants' deliberate indifference to Plaintiff's serious

medical needs.

2.      Plaintiff broke his left middle finger when he fell down the stairs at the Cook

County Department of Corrections (the "CCDOC") in October of 2007.  Although it quickly

became evident that Plaintiff needed medical treatment—which point was confirmed through X-

rays and medical records—Defendants inexplicably failed to provide Plaintiff with the required

and recommended surgery.  Plaintiff's injury worsened over time, and he remained in substantial

pain throughout his time at the CCDOC.  Defendants' failure to treat this injury caused a serious

handicap to Plaintiffs' left hand, and caused Plaintiff to suffer substantial and unnecessary pain.

3.      Plaintiff's injuries arose out of Defendants' widespread practice and custom of

failing to provide medical treatment to inmates at the CCDOC.  Defendants' illegal practices

were well-documented by the Civil Rights Division of the United States Department of Justice

and the United States Attorney's Office (collectively, the "DOJ") in a report issued on July 11,

2008 (the "DOJ Report").  (*See* DOJ Report attached as Exhibit A).  The DOJ Report found a

"myriad of unconstitutional practices" at the Cook County Jail, including the widespread practice

of failing to provide adequate medical treatment to Cook County Jail inmates like Aleman.  The

DOJ Report concluded in no uncertain terms that the Cook County Jail "is not adequately

providing for the safety and well-being of inmates."  (Ex. A at 2).

4.      Through this action, Plaintiff seeks to redress his wrongs suffered as a result of the Defendants' deliberate and wrongful acts and/or omissions and seeks compensatory damages, punitive damages, costs, reasonable attorney's fees and any other relief that the Court deems just and proper.

## PARTIES

5.      Plaintiff is an individual who at all times relevant to this action was a pretrial detainee residing at the CCDOC's Cook County Jail, 2700 South California Avenue, Chicago, Illinois.  Plaintiff currently resides at the Centralia Correctional Center in Centralia, Illinois.

6.      Defendant THOMAS DART is the Cook County Sheriff.  Defendant Dart is responsible for the operation and administration of the CCDOC, including the overall management of the CCDOC and its inmates, personal programs and activities and administrative functions, as well as the oversight of day-to-day operations.  Dart is also responsible for implementing, enforcing and supervising the policies, customs, practices and procedures of the CCDOC and the safety and well-being of inmates, including ensuring that the CCDOC and Cermak Health Services ("Cermak") take reasonable measures to provide inmates adequate medical aid and to provide humane and acceptable medical treatment and care in terms of modern medicine and technology.

7.      Defendant SALVADOR GODINEZ is the Director of the CCDOC.  As Director of the CCDOC, Godinez is also responsible for the operations and administration of the CCDOC, including, but not limited to: (a) supervising the policies, customs and regulations of the CCDOC; (b) protecting the safety and health of inmates, including ensuring that the CCDOC staff members take reasonable measures to provide adequate medical aid; and (c) implementing and enforcing policies and procedures to ensure that sick and injured inmates are provided prompt and appropriate medical treatment.

8.      Defendant COOK COUNTY was the employer of all other named Defendants, at all times relevant to this Complaint.  Cook County is a local public entity under the laws of the State of Illinois.  Cook County is liable to indemnify Defendant Dart and all other Defendants, pursuant to 55 ILCS 5/5-1002 and 745 ILCS 10/9-102, and therefore is an indispensable party. *Askew v. Sheriff of Cook County*, 568 F.3d 632 (7th Cir. 2009).

9.      Defendant COOK COUNTY is also responsible for the execution of unconstitutional governmental policies and/or customs, under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978).

10.     Defendant AVERY HART is the Medical Director at Cermak.  Hart is responsible for medical treatment of prison inmates and the oversight of the administration of medical aid to prison inmates at the CCDOC, including but not limited to: (a) monitoring the medical conditions of inmates who return from the CCDOC Infirmary or Cermak Health Services; (b) assessing inmates and determining when they are in need of medical aid; and (c) implementing, enforcing and overseeing policies to ensure that medical staff provide prompt and appropriate medical treatment to inmates.  Hart has a duty to ensure that inmates receive necessary medical care and treatment.

11.     Defendant DAVID FAGUS was the Chief Operating Officer at Cermak.  As such, he was responsible for the functioning of Cermak and providing adequate health care to inmates of the CCDOC.  Fagus was responsible for medical treatment of prison inmates and the oversight of the administration of medical aid to prison inmates at the CCDOC, including but not limited to: (a) monitoring the medical conditions of inmates who return from the CCDOC Infirmary or Cermak; (b) assessing inmates and determining when they are in need of medical aid; and (c) implementing, enforcing, and overseeing policies to ensure that medical staff provide prompt and

4

appropriate medical treatment to inmates.  Fagus had a duty to ensure that inmates received

necessary medical care and treatment.

12.     Defendant MICHAEL PUISIS is the current Chief Operating Officer at Cermak.

As such, he is responsible for the functioning of Cermak and providing adequate health care to

inmates of the CCDOC.  Puisis is responsible for medical treatment of prison inmates and the

oversight of the administration of medical aid to prison inmates at the CCDOC, including but not

limited to: (a) monitoring the medical conditions of inmates who return from the CCDOC

Infirmary or Cermak; (b) assessing inmates and determining when they are in need of medical

aid; (c) implementing, enforcing and overseeing policies to ensure that medical staff provide

prompt and appropriate medical treatment to inmates.  Puisis has a duty to ensure that inmates

receive necessary medical care and treatment.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over Plaintiff's claims, which arise

under the Fourteenth Amendment to the United States Constitution and under 42 U.S.C. § 1983,

pursuant to 28 U.S.C. § 1331.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because all of the

events giving rise to this action occurred in this District.

## FACTUAL ALLEGATIONS

15.     Plaintiff resided at Cook County Jail from December 6, 2006 through August 8,

2008.  He was housed in Division 6, Unit 1J between August 3, 2007 and November 14, 2007.

16.     There are twenty cells in Division 6, Unit lJ.  On information and belief, there is a

policy to house two inmates per cell.

17.     The cells in Division 6, Unit lJ form a rectangle around what is known as the

"Day-room."  There are two levels, and each level is made up of ten cells.  The inmates on the

upper level can only access the Day-room through a stairway.  Plaintiff resided on the upper

level at the time of his injury.  The Day-room has a television, three telephones, three tables and

access to a bathroom.  Each morning, at approximately 7:30 a.m., a guard unlocks the inmates

cell doors and allows them access to the Day-room.  The doors to the cells can be locked and

unlocked either manually or automatically by a guard pressing a button located in a separate

office adjoining the Day-room where a guard is stationed, watching the inmates through a

window.

18.     All of the inmates in Division 6, Unit lJ, approximately forty, usually occupy the

Day-room each morning from 7:30 a.m. to 1:00 p.m. and from 4:00 p.m. to 9:00 p.m.  Inmates

are not handcuffed or otherwise restrained while in the Day-room, so they move freely.

### The Fall

19.     On October 18, 2007, in the early evening, Plaintiff was descending the stairs to

gain access to the Day-room when he slipped and fell, injuring his left hand on the stairwell.

### Plaintiff's Treatment at Cermak

20.     After obvious injury to his left hand, Plaintiff was taken to the Emergency Room

at Cermak.

21.     When Plaintiff arrived at Cermak he was seen by a physician who recommended

X-rays and pain medication.

22.     An X-ray technician took X-rays of Plaintiff's left hand and a nurse gave him pain

medication.  Cermak released Plaintiff to the guards' custody after putting a temporary hand

support or splint on his left hand, dispensing the medicine and taking the X-rays.

23.     Cermak medical staff knew immediately that Plaintiff's middle finger was

fractured and that Plaintiff needed to be taken to John H. Stroger, Jr. Hospital's ("Stroger") Hand

Clinic as soon as possible.  (*See* October 18, 2007 Emergency Room Record attached as Exhibit
B ("Pt. to ER tomorrow AM for transfer to JSH Hand Clinic")).

24.     The facilities at Cermak are limited and are ill-equipped to provide adequate
treatment for Plaintiff's injuries.  Plaintiff would not receive the treatment he needed unless he
was taken to Stroger.

25.     Plaintiff was not told he had a severe and serious fracture when he left Cermak on
October 18, 2007.

### Plaintiff's Return to Cook County Jail

26.     The guards took Plaintiff back to Cook County Jail to his cell in Division 6,
Unit 1J, which is not a special unit for inmates who need medical attention.

27.     Following Plaintiff's injury on October 18, 2007, he began experiencing severe
pain in his left hand.

28.     The CCDOC did not take Plaintiff to Stroger on October 19, 2007, despite the
referral from Cermak.

29.     On October 20, 2007, Plaintiff was without pain medication.  He told the morning
guard on duty that he was in pain and asked to go to Cermak.  The guard called Cermak and
asked if Plaintiff could be seen for his injury.  Shortly thereafter, the guard reported to Plaintiff
that Cermak confirmed that he had been scheduled for a follow up appointment, but the
appointment was rescheduled.

30.     Plaintiff's X-ray was read by Oscar A. Jara, Medical Division Chairman for
Cermak, and electronically signed by Calvin Flowers, a Consultant Physician at Cermak, on
October 23, 2007 at 9:53 p.m.  The X-ray states:  "Examination of the left middle finger reveals
an oblique fracture of the third proximal phalanx.  Slight separation and overriding of the
fragments is seen."  (*See* October 23, 2007 Radiology Report attached as Exhibit C).

31.     On Thursday, November 8, 2007, Plaintiff was seen by medical personnel at Cermak, who marked Plaintiff for a "PRIORITY" consultation at Cermak and recommended that he be taken to Stroger's Hand Clinic the following week.  (*See* November 8, 2007 Consultation Request Form attached as Exhibit D ("Pt needs to be seen at CCH Hand Clinic Next Week")).

### Plaintiff Returns to Cermak Health Services for Treatment

32.     On November 27, 2007, Plaintiff arrived at Cermak and was seen by a physician. The doctor recommended a second X-ray and prescribed pain medication.

33.     After the X-ray technician took the X-rays and the pain medicine was dispensed, Cermak released Plaintiff to the guards' custody.

### Second X-ray Report reveals Plaintiff's Fracture Worsened

34.     On November 29, 2007, Cermak X-rayed Plaintiff's left hand and again recommended that Plaintiff be sent to Stroger's Hand Clinic.

35.     On December 3, 2007, the second X-ray report was read and electronically signed at 12:28 p.m. by Oscar A. Jara, Medical Division Chairman for Cermak.  (*See* December 3, 2007 Radiology Report attached as Exhibit E).  The report states, "Left middle finger reveals an oblique fracture through the proximal third phalanx.  There is about 3.0 mm separation and displacement of the fragments ..." *Id*.

### First Examination by Stroger Hand Clinic Over Six Weeks from Injury

36.     On December 3, 2007, Plaintiff was taken *for the first time* to the Stroger Hand Clinic, more than six weeks after the date of the injury.

37.     After taking another set of X-rays of Plaintiff's left hand, the physician at Stroger scheduled Plaintiff for a follow up appointment at the Stroger Hand Clinic on December 12, 2007 and scheduled Plaintiff for surgery on December 27, 2007.

### Plaintiff Was Not Taken to His Scheduled Appointments at Stroger

38.     The CCDOC did not take Plaintiff to his December 12, 2007 appointment at Stroger.

39.     Instead, on December 12, 2007, Plaintiff was taken to Cermak, where the Progress Notes indicate that Plaintiff was scheduled for follow up with Stroger on December 27, 2007.

40.     The CCDOC also did not take Plaintiff to his December 27, 2007 scheduled surgery at Stroger.

### Doctor Urges Treatment

41.     On January 11, 2008, Plaintiff was taken to Cermak, where the Progress Notes report that Plaintiff was supposed to have surgery on his left middle finger and that his condition was painful.  The Progress Notes also indicate that Plaintiff was scheduled for his surgery on December 27 , 2007 but that "he was not called."  Furthermore, the Progress Notes strongly and explicitly urged for Plaintiff to be provided with surgery "ASAP."  (*See* January 11, 2008 Progress Notes attached as Exhibit F).

42.     At the January 11, 2008 visit to Cermak, Plaintiff received more pain medication and some cream to be applied to his fractured area, which had grown an infection.  After dispensing the medicine, Cermak released Plaintiff to the guards' custody.

43.     On January 31, 2008, Plaintiff was seen again by a doctor.  The Consultation Request Form notes that Plaintiff was "scheduled for surgery but he was not called" and that Plaintiff had "continued pain and loss of motion" of his left middle finger.  Plaintiff was again referred to Stroger's Hand Clinic.  (*See* January 31, 2008 Consultation Request Form attached as Exhibit G).

44.     Finally, on February 6, 2008, Plaintiff was returned to Stroger's Hand Clinic, more than two months since his last visit to Stroger.  Because of the substantial delays, however, Plaintiff's finger healed in an abnormal position and surgery was not preferable at that time.  The physician who examined Plaintiff on this date recommended range of motion exercises for Plaintiff and stated "no operation is indicated at this time until his finger has significantly improved as far as range of motion."  (*See* February 6, 2008  Progress Notes attached as Exhibit H).

45.     On February 21, 2008, Plaintiff was taken to Cermak, where the doctor recommended physical therapy and noted that Plaintiff's finger had significant stiffness.

### Plaintiff Pleads for Medical Care

46.     On February 27, 2008, with the assistance of a Spanish and English speaking inmate, Plaintiff filled a Detainee Health Service Request Form, complaining that it had been five months since he had broken his finger, that he had contracted an infection on two fingers, that puss-like fluids were coming out of his two fingers, and that he was in a lot of pain.  The response to Plaintiff's request for medical care was that he was "scheduled for March 4, 2008." (*See* February 27, 2008 Detainee Health Service Request Form attached as Exhibit I).

47.     On March 4, 2008, Plaintiff was taken to Cermak for a follow up.  He was treated for the infection, puss-like fluids were drained and antibiotics and pain medication were prescribed.  After dispensing the medicine, Plaintiff was released to the guards' custody.

48.     Unbeknownst to the Plaintiff, on March 4, 2008, Plaintiff had also been scheduled for an appointment with Stroger.  However, Plaintiff was not taken to Stroger on March 4, 2008. (*See* March 4, 2008 Occupational Therapy Outpatient Notes attached as Exhibit J at 2).

49.     On March 11, 2008, Plaintiff had also been scheduled for an appointment with Stroger; however, Plaintiff was not taken to Stroger.  (*See* Ex. J at 1).

50.     On April 3, 2008, Plaintiff was seen by a physician and the Consultation Request Form notes that Plaintiff had broken his finger six months ago, that Plaintiff's finger was very stiff and that there were plans for surgical intervention.  (*See* April 3, 2008 Consultation Request Form attached as Exhibit K).

51.     On April 18, 2008, Plaintiff was taken to Stroger and was scheduled for surgery to take place on April 24, 2008.

52.     On April 24, 2008, Plaintiff was taken to Stroger for his scheduled surgery. While being prepared for surgery, Plaintiff suffered from what appeared to the doctors to be a seizure.

53.     Doctors then postponed the surgery and admitted Plaintiff so that he could be observed and tested over the next two days.

54.     After performing various tests, Plaintiff was released to CCDOC custody on April 26, 2008.

55.     Stroger scheduled a follow up appointment with the Hand Clinic for May 7, 2008 and noted that he would be rescheduled for hand surgery, once he was given medical clearance. (*See* Patient Discharge Summary attached as Exhibit L).

56.     Stroger also scheduled an MRI for May 12, 2008 and other follow up appointments for May 20, 2008 and May 23, 2008.  (*See* Preliminary Report attached as Exhibit M at 2).

57.     At his May 7, 2008 appointment at Stroger, the doctors again noted that Plaintiff would be rescheduled for hand surgery, once the doctors gave him medical clearance following his MRI and follow up appointments.  (*See* ACHN Progress Notes attached as Exhibit N).

58.     Plaintiff's May 12, 2008 scheduled MRI was cancelled per Sergeant Holmes and Lieutenant Martinak.  (*See* May 12, 2008 Hospital Log attached at Exhibit O at 4).

### Plaintiff's Treatment Is Terminated

59.     The CCDOC did not take Plaintiff to his follow up appointments at Stroger on May 20, 2008 or May 23, 2008.

60.     In fact, Plaintiff was never provided any further medical attention for his hand injury, despite remaining in severe pain and lacking the use of his left hand, though he remained at the CCDOC until August 8, 2008.

### Plaintiff's Grievance and Complaint

61.     On or about May 20, 2008, Plaintiff completed a grievance form in connection with the CCDOC and Cermak's failure to provide him with medical treatment.  Plaintiff does not speak English and needed another inmate who was bilingual to assist him in completing the form.  Plaintiff turned in the form to the mailbox where grievance forms were to be delivered; however, he never received a response to his grievance.  (*See* Detainee Grievance attached as Exhibit P).

62.     Plaintiff remained at the CCDOC until August 8, 2008, at which time he was transferred to Illinois Department of Corrections' Shawnee Correctional Center.

### Recognized Pattern of Constitutional Violations

63.     On July 11, 2008, the Civil Rights Division of the United States Department of Justice and the United States Attorney's Office reported the findings of a comprehensive 17-month investigation of the CCDOC and in particular the Cook County Jail, in a 98 page report to Cook County Board President, Todd Stroger, and Defendant Dart.  The investigation included on-site inspections with expert consultants in corrections and custodial medical care, among other areas.

64.     The DOJ Report describes a "myriad of unconstitutional practices" that were similar to Plaintiff's situation and concludes that the Cook County Jail "is not adequately providing for the safety and well-being of inmates."  (Ex. A at 3 and 5).  The DOJ Report substantiates many of Plaintiff's claims, including but not limited to his claims regarding: (a) inadequate medical treatment; (b) inadequate medical staffing; (c) inadequate emergency care; (d) inadequate medication administration; and (e) inadequate access to medical care.

65.     Defendants have repeatedly and consistently disregarded known or serious risks of harm to inmates at the CCDOC, as detailed in the DOJ Report.

66.     Defendants have repeatedly and consistently failed to provide adequate medical care to inmates with serious medical needs that are known and/or obvious, resulting in substantial suffering and harm to CCDOC inmates.

67.     The factual allegations set forth in the DOJ Report have been obvious and known to Defendants for a substantial period of time, including but not limited to the period of time between December 6, 2006 and August 8, 2008, yet Defendants failed to adequately address the conditions described.

68.     In fact, according to the DOJ Report, the Department of Justice notified "CCJ officials and legal counsel for the County and Sheriff's Office" of their preliminary findings "at the close of [their] July 2007 site visit," which was three months prior to Plaintiff's October 18, 2007 injury.  (Ex. A at 2).

**COUNT I**
**FOURTEENTH AMENDMENT CLAIM CONCERNING FAILURE TO PROVIDE**
**MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983**
**(THOMAS DART as Sheriff of Cook County—In His Individual Capacity)**

69.     Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 68 of this Second Amended Complaint.

70.     On information and belief, the CCDOC has a policy whereby Dart as Sheriff bears responsibility for the management and day-to-day operations at the CCDOC, including ensuring that inmates are provided with prompt and adequate medical treatment.

71.     Defendant Dart as Sheriff was responsible for Plaintiff's medical care while he was a pretrial detainee at the CCDOC and had a duty to ensure that Plaintiff specifically and inmates in general received adequate medical treatment.

72.     Defendant Dart as Sheriff knew or should have known that inmates repeatedly complained of not receiving medical treatment and that the CCDOC and Cermak frequently violated the CCDOC and Cermak's policies by failing to provide medical treatment for inmates', and in particular Plaintiff's, serious medical needs.

73.     Defendant Dart as Sheriff failed to implement or enforce policies to ensure that inmates with serious medical needs were taken to the appropriate medical facilities and were provided with necessary and prompt medical treatment.

74.     Defendant Dart as Sheriff knew or should have known that certain inmates, specifically Plaintiff, required outside medical treatment, such as Plaintiff's treatment and surgery.

75.     Defendant Dart as Sheriff further breached his duty by failing to implement and enforce the policies and adequately supervise the correctional officers and medical staff to ensure that reasonable precautions to provide adequate and prompt medical treatment to inmates, such as Plaintiff, were made.

76.     Defendant Dart as Sheriff had knowledge of CCDOC and Cermak policy violations and breaches of duties by the correctional officers and medical staff, but failed to implement or enforce policies and procedures to correct the problems.

77.     As a result of Defendant Dart as Sheriff's inaction, Plaintiff suffered significant and likely permanent injury to his left hand, as well as severe and unnecessary pain.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant DART as Sheriff as follows:

 1. Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

 2. Granting Plaintiff punitive damages in an amount to be determined at trial;

 3. Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

 4. Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

 5. Granting any such other relief as this Honorable Court deems just and proper.

<u>**COUNT II**</u>
<u>**FOURTEENTH AMENDMENT CLAIM CONCERNING FAILURE TO PROVIDE**</u>
<u>**MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983**</u>
**(THOMAS DART as Sheriff of Cook County—In His Official Capacity)**

78.     Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 68 of this Second Amended Complaint.

79.     On information and belief, the CCDOC has a policy whereby Defendant Dart as Sheriff bears responsibility for the management and day-to-day operations at the CCDOC, including ensuring that inmates are provided with prompt and adequate medical treatment.

80.     Defendant Dart as Sheriff was responsible for Plaintiff's medical care, while he was a pretrial detainee at the CCDOC and had a duty to ensure that Plaintiff specifically and inmates in general received adequate medical treatment.

81.     Defendant Dart as Sheriff knew or should have known that inmates repeatedly complained of not receiving medical treatment and that the CCDOC and Cermak frequently

violated the CCDOC and Cermak's policies by failing to provide medical treatment to inmates, and Plaintiff in particular.

82.     Defendant Dart as Sheriff failed to implement or enforce policies and procedures to ensure that inmates with serious medical needs were taken to the appropriate medical facilities and were provided with necessary and prompt medical treatment.

83.     Defendant Dart as Sheriff knew or should have known that certain inmates, specifically Plaintiff, required outside medical treatment, such as Plaintiff's treatment and surgery.

84.     Defendant Dart as Sheriff further breached his duty by failing to implement and enforce the policies and adequately supervise the correctional officers and medical staff to ensure that reasonable precautions to provide adequate and prompt medical treatment to inmates, such as Plaintiff, were made.

85.     Defendant Dart as Sheriff had knowledge of CCDOC and Cermak policy violations and breaches of duties by the correctional officers and medical staff, but failed to implement or enforce policies and procedures to correct the problems.

86.     As a result of Defendant Dart as Sheriff's inaction, Plaintiff suffered significant and likely permanent injury to his left hand, as well as severe and unnecessary pain.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant DART as Sheriff as follows:

1.     Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2.     Granting Plaintiff punitive damages in an amount to be determined at trial;

3.     Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

4.     Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

5.      Granting any such other relief as this Honorable Court deems just and proper.

## COUNT III
## FOURTEENTH AMENDMENT CLAIM CONCERNING FAILURE TO PROVIDE MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983
### (SALVADOR GODINEZ as Director of CCDOC—In His Individual Capacity)

87.      Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 68 of this Second Amended Complaint.

88.      On information and belief, the CCDOC has a policy whereby Godinez as Director of CCDOC bears responsibility for the management and day-to-day operations at the CCDOC, including ensuring that inmates are provided with prompt and adequate medical treatment.

89.      Defendant Godinez as Director of CCDOC was responsible for Plaintiff's medical care, while he was a pretrial detainee at the CCDOC and had a duty to ensure that Plaintiff specifically and inmates in general received adequate medical treatment.

90.      Defendant Godinez as Director of CCDOC knew or should have known that inmates repeatedly complained of not receiving medical treatment and that the CCDOC and Cermak frequently violated the CCDOC and Cermak's policies by failing to provide medical treatment for inmates', and in particular Plaintiff's, serious medical needs.

91.      Defendant Godinez as Director of CCDOC failed to implement or enforce policies to ensure that inmates with serious medical needs were taken to the appropriate medical facilities and were provided with necessary and prompt medical treatment.

92.      Defendant Godinez as Director of CCDOC knew or should have known that certain inmates, specifically Plaintiff, required outside medical treatment, such as Plaintiff's treatment and surgery.

93.      Defendant Godinez as Director of CCDOC further breached his duty by failing to implement and enforce the policies and adequately supervise the correctional officers and

17

medical staff to ensure that reasonable precautions to provide adequate and prompt medical treatment to inmates, such as Plaintiff, were made.

94.     Defendant Godinez as Director of CCDOC had knowledge of CCDOC and Cermak policy violations and breaches of duties by the correctional officers and medical staff, but failed to implement or enforce policies and procedures to correct the problems.

95.     As a result of Defendant Godinez as Director of CCDOC's inaction, Plaintiff suffered significant and likely permanent injury to his left hand, as well as severe and unnecessary pain.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant GODINEZ as Director of CCDOC as follows:

1.     Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2.     Granting Plaintiff punitive damages in an amount to be determined at trial;

3.     Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

4.     Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

5.     Granting any such other relief as this Honorable Court deems just and proper.

## COUNT IV
## FOURTEENTH AMENDMENT CLAIM CONCERNING FAILURE TO PROVIDE MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983
### (SALVADOR GODINEZ as Director of CCDOC—In His Official Capacity)

96.     Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 68 of this Second Amended Complaint.

97.     On information and belief, the CCDOC has a policy whereby Defendant Godinez as Director of CCDOC bears responsibility for the management and day-to-day operations at the

CCDOC, including ensuring that inmates are provided with prompt and adequate medical treatment.

98.     Defendant Godinez as Director of CCDOC was responsible for Plaintiff's medical care, while he was a pretrial detainee at the CCDOC and had a duty to ensure that Plaintiff specifically and inmates in general received adequate medical treatment.

99.     Defendant Godinez as Director of CCDOC knew or should have known that inmates repeatedly complained of not receiving medical treatment and that the CCDOC and Cermak frequently violated the CCDOC and Cermak's policies by failing to provide medical treatment to inmates', and in particular Plaintiff's, serious medical needs.

100.     Defendant Godinez as Director of CCDOC failed to implement or enforce policies and procedures to ensure that inmates with serious medical needs were taken to the appropriate medical facilities and were provided with necessary and prompt medical treatment.

101.     Defendant Godinez as Director of CCDOC knew or should have known that certain inmates, specifically Plaintiff, required outside medical treatment, such as Plaintiff's treatment and surgery.

102.     Defendant Godinez as Director of CCDOC further breached his duty by failing to implement and enforce the policies and adequately supervise the correctional officers and medical staff to ensure that reasonable precautions to provide adequate and prompt medical treatment to inmates, such as Plaintiff, were made.

103.     Defendant Godinez as Director of CCDOC had knowledge of CCDOC and Cermak policy violations and breaches of duties by the correctional officers and medical staff, but failed to implement or enforce policies and procedures to correct the problems.

104.    As a result of Defendant Godinez as Director of CCDOC's inaction, Plaintiff

suffered significant and likely permanent injury to his left hand, as well as severe and

unnecessary pain.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment

against Defendant GODINEZ as Director of CCDOC as follows:

1.    Granting Plaintiff compensatory damages in an amount not yet known and
      to be determined at trial;

2.    Granting Plaintiff punitive damages in an amount to be determined at trial;

3.    Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

4.    Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42
      U.S.C. § 1988; and

5.    Granting any such other relief as this Honorable Court deems just and
      proper.

## COUNT V
## FOURTEENTH AMENDMENT CLAIM CONCERNING FAILURE TO PROVIDE
## MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983
### (AVERY HART as Medical Director—In His Individual Capacity)

105.    Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 68

of this Second Amended Complaint.

106.    On information and belief, the CCDOC and Cermak have a policy whereby the

Medical Director at Cermak bears responsibility for: (a) ensuring that prison inmates receive

necessary and prompt medical care and treatment; (b) monitoring the medical condition of

inmates who return after medical treatment from the Infirmary and Cermak or otherwise have

exhibited need for medical aid; and (c) overseeing administration of medical aid to prison

inmates.

107.    Defendant Hart as Medical Director is responsible for Plaintiff's and all inmates'

medical care, while detained at the CCDOC, and has a duty to implement and enforce policies to

ensure that the Cermak medical staff takes reasonable precautions to provide adequate medical treatment and respond reasonably to complaints of severe pain and other medical needs.

108.    Defendant Hart as Medical Director knew of or should have known about Plaintiff's serious need for medical treatment, that his condition was painful, that if left untreated would cause additional harm, and that he repeatedly requested and was repeatedly denied medical treatment.

109.    Defendant Hart as Medical Director breached his duty and/or violated certain CCDOC and Cermak policies by failing to ensure that Plaintiff specifically and inmates in general received necessary medical treatment and by turning a blind eye to the widespread practice and custom of failing to provide medical treatment to inmates by Cermak medical staff.

110.    Defendant Hart as Medical Director was personally involved in the denial of medical treatment by the correctional officers and members of the Cermak medical staff to Plaintiff by failing to implement the necessary policies and procedures for ensuring inmates obtain adequate medical treatment and by turning a blind eye to the widespread practice and custom of failing to provide medical treatment to inmates by Cermak medical staff.

111.    Defendant Hart as Medical Director knew about and/or participated in creating systematic conditions related to the provision of medical care to inmates.

112.    Defendant Hart as Medical Director's deliberate disregard for Plaintiff's serious medical needs resulted in significant and likely permanent injury to his left hand, as well as severe and unnecessary pain.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant HART as Medical Director as follows:

1.    Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2.     Granting Plaintiff punitive damages in an amount to be determined at trial;

3.     Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

4.     Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

5.     Granting any such other relief as this Honorable Court deems just and proper.

**COUNT VI**
**FOURTEENTH AMENDMENT CLAIM CONCERNING FAILURE TO PROVIDE MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983**
**(AVERY HART as Medical Director—In His Official Capacity)**

113.    Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 68 of this Second Amended Complaint.

114.    On information and belief, the CCDOC and Cermak have a policy whereby the Medical Director at Cermak bears responsibility for: (a) ensuring that prison inmates receive necessary and prompt medical care and treatment; (b) monitoring the medical condition of inmates who return after medical treatment from the Infirmary and Cermak or otherwise have exhibited need for medical aid; and (c) overseeing administration of medical aid to prison inmates.

115.    Defendant Hart as Medical Director is responsible for Plaintiff's and all inmates' medical care, while detained at the CCDOC, and has a duty to implement and enforce policies to ensure that the Cermak medical staff takes reasonable precautions to provide adequate medical treatment and responds reasonably to complaints of severe pain and other medical needs.

116.    Defendant Hart as Medical Director knew of or should have known about Plaintiff's serious need for medical treatment, that his condition was painful, that if left untreated would cause additional harm, and that he repeatedly requested and was repeatedly denied medical treatment.

117.     Defendant Hart as Medical Director violated CCDOC and Cermak policies by failing to ensure that inmates, and specifically Plaintiff, receive necessary medical treatment.

118.     Defendant Hart as Medical Director further breached his duty to implement and enforce certain CCDOC policies by failing to ensure that Plaintiff received medical treatment and by knowing about policy violations and breaches of duties by Cermak medical staff and turning a blind eye to those breaches.

119.     Defendant Hart as Medical Director also failed to implement or enforce policies to ensure that inmates with serious medical needs were provided with necessary and prompt medical treatment.

120.     As a result of the inaction of Defendant Hart as Medical Director, Plaintiff suffered significant and likely permanent injury to his left hand, as well as severe and unnecessary pain.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant HART as Medical Director as follows:

1.     Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2.     Granting Plaintiff punitive damages in an amount to be determined at trial;

3.     Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

4.     Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

5.     Granting any such other relief as this Honorable Court deems just and proper.

**COUNT VII**
**FOURTEENTH AMENDMENT CLAIM CONCERNING FAILURE TO PROVIDE**
**MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983**
**(DAVID FAGUS as Chief Operating Officer of Cermak—In His Individual Capacity)**

121.    Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 68 of this Second Amended Complaint.

122.    On information and belief, the CCDOC and Cermak have a policy whereby the Chief Operating Officer at Cermak bears responsibility for: (a) ensuring that prison inmates receive necessary and prompt medical care and treatment; (b) monitoring the medical condition of inmates who return after medical treatment from the Infirmary and Cermak or otherwise have exhibited need for medical aid; and (c) overseeing administration of medical aid to prison inmates.

123.    Defendant Fagus as the former Chief Operating Officer is responsible for Plaintiff's and all inmates' medical care, while detained at the CCDOC, and has a duty to implement and enforce policies to ensure that the Cermak medical staff takes reasonable precautions to provide adequate medical treatment and respond reasonably to complaints of severe pain and other medical needs.

124.    Defendant Fagus as Chief Operating Officer knew of or should have known about Plaintiff's serious need for medical treatment, that his condition was painful, that if left untreated would cause additional harm, and that he repeatedly requested and was repeatedly denied medical treatment.

125.    Defendant Fagus as Chief Operating Officer breached his duty and/or violated certain CCDOC and Cermak policies by failing to ensure that Plaintiff specifically and inmates in general received necessary medical treatment and by turning a blind eye to the widespread practice and custom of failing to provide medical treatment to inmates by Cermak medical staff.

126.     Defendant Fagus as Chief Operating Officer was personally involved in the denial of medical treatment by the correctional officers and members of the Cermak medical staff to Plaintiff by failing to implement the necessary policies and procedures for ensuring inmates obtain adequate medical treatment and by turning a blind eye to the widespread practice and custom of failing to provide medical treatment to inmates by Cermak medical staff.

127.     Defendant Fagus as Chief Operating Officer knew about and/or participated in creating systematic conditions related to the provision of medical care to inmates.

128.     Defendant Fagus as Chief Operating Officer's deliberate disregard for Plaintiff's serious medical needs resulted in significant and likely permanent injury to his left hand, as well as severe and unnecessary pain.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant FAGUS as Chief Operating Officer as follows:

1.     Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2.     Granting Plaintiff punitive damages in an amount to be determined at trial;

3.     Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

4.     Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

5.     Granting any such other relief as this Honorable Court deems just and proper.

## COUNT VIII
## FOURTEENTH AMENDMENT CLAIM CONCERNING FAILURE TO PROVIDE MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983
### (MICHAEL PUISIS as Chief Operating Officer—In His Official Capacity)

129.     Plaintiff restates and re-alleges the allegations set forth in paragraphs 1 through 68 of this Second Amended Complaint.

130.     On information and belief, the CCDOC and Cermak have a policy whereby the Chief Operating Officer at Cermak bears responsibility for: (a) ensuring that prison inmates receive necessary and prompt medical care and treatment; (b) monitoring the medical condition of inmates who return after medical treatment from the Infirmary and Cermak or otherwise have exhibited need for medical aid; and (c) overseeing administration of medical aid to prison inmates.

131.     Defendant Puisis as Chief Operating Officer is responsible for Plaintiff's and all inmates' medical care, while detained at the CCDOC, and has a duty to implement and enforce policies to ensure that the Cermak medical staff takes reasonable precautions to provide adequate medical treatment and responds reasonably to complaints of severe pain and other medical needs.

132.     Defendant Puisis as Chief Operating Officer knew of or should have known about Plaintiff's serious need for medical treatment, that his condition was painful, that if left untreated would cause additional harm, and that he repeatedly requested and was repeatedly denied medical treatment.

133.     Defendant Puisis as Chief Operating Officer violated CCDOC and Cermak policies by failing to ensure that inmates, and specifically Plaintiff, receive necessary medical treatment.

134.     Defendant Puisis as Chief Operating Officer further breached his duty to implement and enforce certain CCDOC policies by failing to ensure that Plaintiff received medical treatment and by knowing about policy violations and breaches of duties by Cermak medical staff and turning a blind eye to those breaches.

135.     Defendant Puisis as Chief Operating Officer also failed to implement or enforce policies to ensure that inmates with serious medical needs were provided with necessary and prompt medical treatment.

136.     As a result of the inaction of Defendant Puisis as Chief Operating Officer, Plaintiff suffered significant and likely permanent injury to his left hand, as well as severe and unnecessary pain.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant PUISIS as Chief Operating Officer as follows:

1.     Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2.     Granting Plaintiff punitive damages in an amount to be determined at trial;

3.     Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

4.     Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

5.     Granting any such other relief as this Honorable Court deems just and proper.

## COUNT IX
## *MONELL* CLAIM AGAINST COOK COUNTY FOR FAILURE TO PROVIDE MEDICAL TREATMENT IN VIOLATION OF 42 U.S.C. § 1983

137.     Plaintiff restates and re-alleges the allegations set forth in paragraph 1 through 68 of this Second Amended Complaint.

138.     A local governing body is liable for monetary damages under Section 1983, where the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority.

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978); *Valentino v. Vill. of S. Chi. Heights,*

575 F.3d 664, 674 (7th Cir. 2009).

139.    On July 11, 2008, the Civil Rights Division of the United States Department of

Justice and the United States Attorney's Office found that the medical treatment provided by the

CCDOC and Cermak fell significantly below the constitutional standards of care.  (*See* Ex. A).

140.    The DOJ found that the CCDOC was deficient in providing care to its inmates,

specifically finding that the CCDOC provided: (a) inadequate medical treatment; (b) inadequate

medical staffing; (c) inadequate emergency care; (d) inadequate medication administration; and

(e) inadequate access to medical care.

141.    The investigation that led to such findings took place over seventeen months,

beginning in early 2007 and extending through the date of the report on July 11, 2008, precisely

overlapping with the time period that Plaintiff was denied medical treatment from October 2007

through August 2008.

142.    Defendants have repeatedly and consistently disregarded known and/or serious

risks of harm to inmates at the CCDOC, as detailed in the DOJ Report.

143.    Defendants have repeatedly and consistently failed to provide adequate medical

care to inmates with serious medical needs that are known and/or obvious, resulting in

substantial suffering and harm to CCDOC inmates.

144.    The factual allegations set forth in the DOJ Report have been obvious and known

to Defendants for a substantial period of time, including but not limited to the period of time

between December 6, 2006 and August 8, 2008, yet Defendants failed to adequately address the

conditions described.

145.    In fact, according to the DOJ Report, the Department of Justice notified "CCJ officials and legal counsel for the County and Sheriff's Office" of their preliminary findings "at the close of [their] July 2007 site visit," which was three months prior to Plaintiff's October 18, 2007 injury.  (Ex. A at 2).

146.    The same deficient policies, customs, practices, and procedures by the Defendants that were described in the DOJ Report were the cause of Plaintiff's lack of medical treatment for his hand injury and the severe pain and likely permanent injury that resulted from that lack of treatment.

147.    As a direct and proximate result of the Defendants' deficient policies, customs, practices, and procedures, Plaintiff suffered significant and likely permanent injury to his left hand, as well as severe and unnecessary pain.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against Defendant COOK COUNTY as follows:

1.    Granting Plaintiff compensatory damages in an amount not yet known and to be determined at trial;

2.    Granting Plaintiff an award of costs, pursuant to 28 U.S.C. § 1920;

3.    Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. § 1988; and

4.    Granting any such other relief as this Honorable Court deems just and proper.

## COUNT X
## 55 ILCS 5/5-1002 AND 745 ILCS 10/9-102 CLAIM FOR INDEMNIFICATION OF COOK COUNTY "EMPLOYEES"

148.    Plaintiff restates and re-alleges the allegations set forth in paragraph 1 through 136 of this Second Amended Complaint.

149.    Defendant Cook County, Illinois is a local public entity as defined in 745 ILCS 10/1-206.

150.    All other Defendants were and/or are, at all relevant times, "employees" of Defendant Dart and Cook County, Illinois, as defined by 745 ILCS 10/1-202.

151.    Defendant Cook County is liable and responsible for payment of any judgments against or settlements entered into by Defendant Dart, pursuant to 55 ILCS 5/5-1002, *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003), and *Askew v. Sheriff of Cook County*, 568 F.3d 632 (7th Cir. 2009).

152.    Defendant Cook County is liable and responsible for payments of any judgments against or settlements entered into by all other Defendants, pursuant to 745 ILCS 10/9-102.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against the Defendant COOK COUNTY in the amounts awarded to Plaintiff against all other Defendants, pursuant to 55 ILCS 5/5-1002 and 745 ILCS 10/9-102.

## <u>CONCLUSION</u>

WHEREFORE, Plaintiff respectfully requests that this Honorable Court find that the acts and omissions described herein violated Plaintiff's rights under the Constitution of the United States and 42 U.S.C. § 1983,  and enter judgment against the Defendants as follows:

1.    Granting Plaintiff compensatory damages in an amount to be determined;

2.    Granting Plaintiff punitive damages in an amount to be determined;

3.    Granting Plaintiff an award of costs and expenses, pursuant to 28 U.S.C. § 1920;

4.    Granting Plaintiff an award of reasonable attorney's fees, pursuant to 42 U.S.C. §§ 1983 & 1988 and the laws of the United States; and

5.    Granting any such other relief as this Honorable Court deems just and proper.

DATED: July 26, 2010                          ALVARO ALEMAN

                                              By: ___s/ Ashlee M. Knuckey_____
                                                   One of His Attorneys


Steven T. Whitmer (# 06244114)
Ernesto R. Palomo (# 06278186)
Ashlee M. Knuckey (# 6300237)
LOCKE LORD BISSELL & LIDDELL LLP
111 S. Wacker Drive
Chicago, IL 60606
Direct: (312) 443-0694 (A.M. Knuckey)
Fax: (312) 896-6694 (A.M. Knuckey)

*Attorneys for Plaintiff Alvaro Aleman*

## Second Amended Complaint Exhibits Index

| Exhibit | Title |
|---|---|
| A | DOJ Report |
| B | October 18, 2007 Emergency Room Record |
| C | October 23, 2007 Radiology Report |
| D | November 8, 2007 Consultation Request Form |
| E | December 3, 2007 Radiology Report |
| F | January 11, 2008 Progress Notes |
| G | January 31, 2008 Consultation Request Form |
| H | February 6, 2008  Progress Notes |
| I | February 27, 2008 Detainee Health Service Request Form |
| J | March 4, 2008 Occupational Therapy Outpatient Notes |
| K | April 3, 2008 Consultation Request Form |
| L | Patient Discharge Summary |
| M | Preliminary Report |
| N | ACHN Progress Notes |
| O | May 12, 2008 Hospital Log |
| P | Detainee Grievance |