IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALVARO ALEMAN, | ) | |
|     Plaintiff, | ) | 09 CV 6049 |
| | ) | |
|     *v.* | ) | Honorable Judge |
| | ) | Robert M. Dow, Jr. |
| COOK COUNTY DEPARTMENT OF | ) | |
| CORRECTIONS, THOMAS DART, *et al.*, | ) | |
|     Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS HART, FAGUS, PUISIS, AND COOK COUNTY'S MOTION TO DISMISS OR TO BIFURCATE *MONELL* CLAIMS**

**NOW COME** Defendants Dr. Avery Hart, Dr. David Fagus, Dr. Michael Puisis, and Cook County, by their attorney, Anita Alvarez, State's Attorney of Cook County, through her Assistant, Patrick S. Smith, and, pursuant to Federal Rule of Civil Procedure 12(b)(6), state as follows in support of their motion to dismiss or, in the alternative, to bifurcate claims relying on *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978):

## I. INTRODUCTION

Plaintiff brings this action under 42 U.S.C., Section 1983, alleging that he received constitutionally inadequate medical care for an injury he suffered while he was a pre-trial detainee in the custody of Defendant Sheriff of Cook County at the Cook County Department of Corrections (CCDOC, a/k/a Cook County Jail). (Sec. Am. Compl., Dkt. 55, ¶¶ 1-2.)

At all relevant times, the Plaintiff, Alvaro Aleman, lived in CCDOC as a pre-trial detainee awaiting charges for selling cocaine. (He was later convicted and sentenced to fifteen years in prison. Aleman currently resides in an Illinois Department of Corrections facility in Centralia, Illinois.) At CCDOC, on October 18, 2007, Plaintiff slipped and fell while descending the stairs in his living unit. (Sec. Am. Compl., Dkt. 55, ¶ 19.) During the fall, Plaintiff broke the middle finger of his left hand. (Sec. Am. Compl., Dkt. 55, ¶ 23.) Plaintiff now sues, alleging

constitutionally inadequate medical care based on delays in the treatment of his broken finger. (Sec. Am. Compl., Dkt. 55, ¶¶ 1-2.) Plaintiff also alleges that CCDOC and Cermak Health Services of Cook County (Cermak) – the county-run medical clinic on CCDOC's campus – have or had policies or practices that prevented him from receiving timely, adequate care.[1] (Sec. Am. Compl., Dkt. 55, ¶ 3.)

There are two groups of defendants in this case. The "Sheriff Defendants" are the Sheriff of Cook County, Thomas Dart, and the Director of CCDOC, Salvador Godinez, both in their individual and official capacities. (Sec. Am. Compl., Dkt. 55, ¶¶ 69-104.)

The movants here are the "County Defendants" – Doctor Avery Hart, Medical Director of Cermak, officially and individually; Doctor David Fagus, Chief Operating Officer of Cermak, individually; Doctor Michael Puisis, Chief Operating Officer of Cermak, officially; and Cook County, a body politic, as a liable party under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and as indemnifier, *see Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003). (Sec. Am. Compl., Dkt. 55, ¶¶ 105-152.)

In general, Plaintiff Aleman alleges that the County Defendants denied him treatment, created policies or practices that resulted in denial of treatment, or ignored breaches of policy by Cermak staff that resulted in denial of treatment. Plaintiff's *Monell* claim against Cook County is supported solely by a report from the United States Department of Justice (DOJ) which does not make individual reference to the Plaintiff, his injury, or his conditions of confinement; furthermore, the report's conclusions of law have never been adopted by any court.

For the following reasons, Plaintiff's claims against the County Defendants should be dismissed or, in the alternative, all references to the DOJ report should be stricken from the

---

[1] Plaintiff Aleman is currently prosecuting another lawsuit against CCDOC and Cermak personnel for alleged failure to protect and inadequate medical care relating to a prior, unrelated assault and battery by other inmates at the jail. *See Aleman v. Dart*, 08cv6322 (N.D. Ill. Filed Nov. 4, 2008) (Dow, J.).

2

Second Amended Complaint and the *Monell* claim against Cook County should be bifurcated and stayed while discovery continues on the remaining counts.

## II. ARGUMENT

### A. Standard of Review

"A dismissal under Rule 12(b)(6) is required if the facts pleaded in the complaint fail to describe a claim that is plausible on its face." *London v. RBS Citizens, N.A.*, 600 F.3d 742, 745 (7th Cir. 2010) (citing *Sharp Elecs. Corp. v. Metro. Life Ins. Co.*, 578 F.3d 505, 510 (7th Cir. 2009); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949-50 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Although, on a motion to dismiss, courts must take all of the factual allegations in the complaint as true, judges "are not bound to accept as true a legal conclusion couched as a factual allegation.")).

It is also possible for plaintiffs to plead themselves out of court by alleging evidence that undercuts their cause of action, supports a defense to their suit, or destroys the plausibility of their claims. *See, e.g., In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009). "It is a well-settled rule," when an exhibit or other evidence is attached to a complaint, that "the exhibit trumps the allegations" wherever there is conflict between the two. *Northern Ind. Gun & Outdoor Shows v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

### B. Plaintiff does not state a claim for constitutionally deficient medical treatment against the County Defendants.

1. <u>The County Defendants were not deliberately indifferent to Plaintiff's safety.</u>

Plaintiff Aleman's Section 1983 claims against the County Defendants for "failure to provide medical treatment" sound in the due process rights secured by the Fourteenth Amendment.

> The Eighth Amendment's ban on "cruel and unusual punishments" requires prison officials to take reasonable measures to guarantee the safety of inmates, including the provision of adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). Although the Eighth Amendment applies only to convicted persons, pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause. Accordingly, [courts] apply the same legal standards to deliberate indifference claims brought under either the Eighth or Fourteenth Amendment. *Thomas v. Cook County Sheriff's Dep't*, 588 F.3d 445, 452 n. 1 (7th Cir. 2009).

*Minix v. Canarecci*, 597 F.3d 824, 830-31 (7th Cir. 2010).

"An Eighth Amendment claim based on inadequate medical care contains two elements: (1) the prisoner suffered an objectively serious harm that presented a substantial risk to his safety, and (2) the defendants were deliberately indifferent to that risk." *Minix*, 597 F.3d at 831 (citing *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006)). For purposes of this motion only, the County Defendants do not contest that Aleman's injury was objectively serious. However, none of the County Defendants were deliberately indifferent to the injury.

The "deliberate indifference" standard contains both objective and subjective elements. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). First, the plaintiff must show the conditions were objectively serious enough to "result in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Next, the plaintiff must show the officials acted with "a sufficiently culpable state of mind" in intentionally disregarding the risk of harm. *Id.*; *Minix*, 597 F.3d at 831.

To the extent that the actions of Cermak's medical personnel can be imputed to the County Defendants, no "culpable state of mind" exists to prove deliberate indifference; indeed, the allegations in Plaintiff's Second Amended Complaint, Dkt. 55, exonerate Cermak Health

Services and the County Defendants. To wit:

¶ 23 – Cermak refers Plaintiff to John Stroger Hospital's hand clinic for the day following the injury;

¶ 28 – CCDOC, not the County Defendants or Cermak, fails to take Plaintiff to Stroger Hospital for appointment;

¶ 31 – Cermak marks Plaintiff for "PRIORITY" appointment and again states that Plaintiff "**needs**" to be taken to Stroger Hospital (emphasis added);

¶¶ 32-33 – Cermak dispenses pain medication to Plaintiff;

¶ 34 – Cermak again recommends sending Plaintiff to Stroger Hospital;

¶ 38 – CCDOC, not County Defendants or Cermak, again causes Plaintiff to miss appointment at Stroger Hospital;

¶ 39 – Cermak again schedules Plaintiff for appointment at Stroger Hospital;

¶ 41 – Cermak "**strongly and explicitl**y **urge[s]** for Plaintiff to be provided with surgery '**ASAP**'" (emphases added);

¶ 42 – Cermak dispenses pain medication and medicinal cream to Plaintiff;

¶ 43 – Cermak again refers Plaintiff to Stroger Hospital;

¶ 44-45 – Stroger Hospital surgeon, not Cermak or County Defendants, says Plaintiff must improve the injured finger's range of motion before Stroger will operate; Cermak doctor prescribes physical therapy to that effect;

¶¶ 47-49 – Cermak treats infection in Plaintiff's injured finger, prescribes more pain medication, and schedules two more appointments at Stroger Hospital;

¶¶ 52-54 – Stroger Hospital, not Cermak or County Defendants, cancels Plaintiff's surgery out of concern for his health;

¶ 58 – CCDOC officers, not Cermak personnel or County Defendants, cancel Plaintiff's scheduled MRI;

¶ 59 – CCDOC, not Cermak or the County Defendants, fails to take Plaintiff to two appointments at Stroger Hospital.

¶ 61 – CCDOC, not Cermak or the County Defendants, fails to act on a grievance form submitted by Plaintiff.

At no point in the Second Amended Complaint's recitation of alleged facts does the Plaintiff assign any blame to Cermak Health Services or the County Defendants. In fact, Plaintiff Aleman's allegations tell a lengthy tale of Cermak's doctors and nurses strongly and continuously attempting to get surgery for him, but being ignored or rebuffed by the CCDOC

and Stroger Hospital. In the absence of surgery, Cermak provided the care it was able to give in the form of pain management, physical therapy, and infection control.

While Cermak repeatedly suggested that Plaintiff be taken to Stroger Hospital, the clinic and the County Defendants do not have the power to order CCDOC to transport detainees anywhere, nor do they have the power to order Stroger Hospital to receive or treat any person. This division of responsibilities between Cermak and CCDOC is identified in the DOJ Report Plaintiff attached to his Second Amended Complaint as Exhibit A. (DOJ Report, at 4.)

The County Defendants did what they could in this case, but cannot be held liable under Section 1983 for actions or inactions that were not in their power to control. "Public officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way. Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job." *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

The County Defendants cannot be held liable, either as personally liable parties or policymakers, when the the delays that Plaintiff alleges caused the deprivation of his constitutional rights were completely outside their control. No policy enacted by Doctors Hart, Fagus, or Puisis could force CCDOC to transport Plaintiff Aleman (or any inmate) to the off-site medical treatment he needed. Nor could they force the surgeons at Stroger Hospital to perform an operation on an expedited basis, particularly when the surgeons had well-founded concerns that immediate surgery could place the Plaintiff's health in severe jeopardy. Whether or not Plaintiff was deprived of his constitutional rights, the County Defendants were not the cause.

  2. <u>Plaintiff cannot state a claim based on a single miscommunication by Cermak.</u>

The worst blame assigned to the County Defendants comes from the Sheriff Defendants' memorandum in support of their motion to dismiss. (Dkt. 65, at 11.) Plaintiff's Exhibit J

6

indicates that his missed appointment on March 11, 2008 was the result of an accidental miscommunication between Cermak's temporary scheduling clerk and CCDOC's personnel. There is no evidence that this scheduling error ever repeated itself or caused substantial delay in Plaintiff's treatment. Indeed, the next attempt at surgery, almost two months later, was canceled by Stroger Hospital because Plaintiff suffered a seizure during preparation. (Sec. Am. Compl., Dkt. 55, ¶ 52.)

Furthermore, "[not] every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976) (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947) (finding no constitutional violation in forcing a prisoner to undergo a second execution attempt after an "unforeseeable accident" caused a mechanical malfunction during the first attempt)).

"[I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be 'repugnant to the conscience of mankind.'" *Gamble*, 429 U.S. at 105-06. "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. The accidental miscommunication described in Exhibit J was just that: an accident by a temporary scheduler who was standing in for a week for the supervisor who normally handled that paperwork. (Sec. Am. Compl., Dkt 55, Ex. J at 1.)

3. <u>Any deliberate indifference caused by the Sheriff Defendants or non-parties cannot be imputed to the County Defendants.</u>

Plaintiff's own evidence admits that the medical functions of Cermak Health Services are "complete[ly] divi[ded]" from the Sheriff's Department and CCDOC. (Sec. Am. Compl., Ex. A,

7

Pt. 1, DOJ Report, at 4. ("Health care services at [the Cook County Jail] are provided by Cermak Health Services . . . . While the health services staff are County employees who are responsible for the health care of all [Jail] inmates, they are not employed by, or responsible to, the Cook County Sheriff or CCDOC.") It necessarily follows from this evidence that Cermak personnel and the County Defendants have no ability to issue orders to, or compel, Sheriff's personnel to do, or not do, any action with regard to inmate security or transport.

    4. <u>The County Defendants are not liable for any harm Plaintiff suffered because they had no personal knowledge of, or involvement with, Plaintiff or his treatment.</u>

"Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Plaintiff Aleman provides nothing more than conclusory allegations that the County Defendants knew his treatment was being delayed. Plaintiff does not claim to know of or suspect any evidence that shows the County Defendants had any relevant knowledge of delayed treatment in his case. Whether the County Defendants' subordinates had any such knowledge is not relevant. *Id.*

    **C. Plaintiff is not entitled to recover punitive damages from any County Defendant sued in his official capacity or from Cook County.**

Even if Plaintiff's claims are not dismissed against the County Defendants, "municipalities are immune from punitive damages in [42 U.S.C.] § 1983 suits." *Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *United States ex rel. Chandler v. Cook County*, 277 F.3d 969, 977 (7th Cir. 2002); *City of Newport v. Fact Concerts*, 453 U.S. 247, 271 (1981)). Further, "punitive damages may be recovered against a government actor only in an individual capacity suit." *Id.* (citing *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991)).

Accordingly, Plaintiff's demands in his Second Amended Complaint for punitive damages in Count VI (against Avery Hart in his official capacity), Count VIII (against Michael Puisis in his official capacity), and Count X (against Cook County as indemnifier, to the extent that such indemnity is based on official-capacity punitive damages) must be dismissed.

**D. Plaintiff's references to the "DOJ Report" should be stricken from the Second Amended Complaint.**

Even if Plaintiff's claims against the county Defendants are not dismissed, his citation to the July 11, 2008 letter from the United States Department of Justice's Civil Rights Division to various Cook County officers (DOJ Report) is inappropriate. Plaintiff seeks to rely on the DOJ Report to prove-up his allegations that CCDOC and Cermak have a poor track record of providing adequate medical care and that the Report placed the Defendants on notice as to the allegedly unconstitutional medical practices at CCDOC and Cermak. The DOJ Report was based on visits by DOJ personnel and consultants to the CCDOC on June 18-22, 2007 and July 23-27, 2007. (DOJ Report, at 1-2.) All references in the Second Amended Complaint to the report, and the text of the report as Exhibit A, should be stricken and a protective order should issue excluding the report from this case.

1. <u>The DOJ Report is inadmissible hearsay.</u>

Plaintiff offers the DOJ Report, which has never been verified or adopted by a court of law, to prove the truth of his allegations that there were "[myriad] unconstitutional practices" occurring at CCDOC "similar to Plaintiff's situation." (Sec. Am. Compl., Dkt. 55, ¶ 64.) This is textbook hearsay. Fed. R. Evid. 801(c).

Plaintiff is not entitled to rely on the public records exception to the hearsay rule, Fed. R. Evid. 803(8)(C). "Factors to consider in deciding whether to admit the evaluative findings of the Report under Rule 803(8)(C) are 'the timeliness of the investigation, [the special skill or

experience of the reporter,] whether a hearing was held in conjunction with [the investigation], and the motivation of the officials conducting the investigation.'" *Anderson v. New York*, 657 F. Supp. 1571, 1578 (S.D.N.Y. 1987) (quoting Weinstein and Berger, *Weinstein's Evidence*, para. 803(8)[01], p. 254). Both the lack of timeliness and the motivation of the fact-finder cut against admissibility of the DOJ Report in this case under the public records exception.

First, the report is not timely for Plaintiff Aleman's case. The DOJ personnel and consultants who prepared the report made no investigation or fact-finding relating to medical care at the jail during the time period at issue in this case (October 2007 to August 2008). The DOJ's investigation ceased months before Plaintiff injured his finger. To extrapolate the DOJ's findings relating to on-site investigations and reviews of past records that concluded months before Plaintiff's injury would be inappropriate. The DOJ did not suggest that medical treatment was inadequate during or after October 2007.

Next, the subjective motivations of the sources used by the DOJ, primarily current inmates and CCDOC personnel, weigh heavily against admitting the report. *See Anderson*, 657 F. Supp. at 1579 (holding inadmissible under Rule 803(8)(C) the report of a legislative fact-finding committee that took primarily one-sided testimony from self-interested parties without providing an opportunity to cross-examine or respond). Here, the County Defendants were not given an opportunity to cross-examine or rebut the people or documents that the DOJ relied on in preparing its report, including the Sheriff Defendants or other CCDOC personnel.

Finally, admitting the DOJ Report would set a dangerous precedent in all future civil rights cases against CCDOC, Cermak, and Cook County, disabling these entities from obtaining summary judgment in cases alleging inadequate medical treatment, no matter the individual facts of the case. *See Anderson*, 657 F. Supp. at 1579 n.7 ("In particular, if plaintiffs were allowed to

10

use this Report to prove the existence of a municipal policy of discrimination in law enforcement, or even the presence of other incidents besides the one alleged in the action, New York City and its public officials would clearly be unable to obtain summary judgment in any civil rights action alleging police misconduct. The Report, in and of itself, would provide a *prima facie* case against the City, regardless of the facts of the particular case under consideration. The burden of proof would therefore be shifted from the plaintiff to the defendant.").

    2.  <u>The DOJ Report is not relevant to Plaintiff Aleman's experiences or treatment.</u>

Plaintiff Aleman is fallaciously attempting to apply what someone said about conditions throughout the entire facility at one point in time to conditions in a limited segment of the facility, relating to a single person (himself), at a different point in time. *Loeffel Steel Products v. Delta Brands*, 387 F. Supp. 2d 794, 808-09 (N.D. Ill. 2005) (Cole, M.J.). Although DOJ personnel inspected the jail for several days in June and July 2007, their findings and reports relating to medical care were based primarily on anecdotal stories from inmates, CCDOC staff, and their own observations.

The Report does not discuss the medical treatment that Plaintiff Aleman did or did not receive, nor even the care that was generally available to him – the DOJ inspectors left three months before Plaintiff's injury occurred. While the Plaintiff is certainly free to relay his own personal knowledge of the treatment he did or did not receive, and call witnesses to expand on or corroborate his account, he is not entitled to rely on the alleged unconstitutional treatment of other inmates, months or years before the treatment he received, to prove that the treatment he received was unconstitutional. The DOJ Report is irrelevant to his claims and should be barred. Fed. R. Evid. 402.

3. <u>The DOJ Report is inadmissible opinion testimony.</u>

In *Loeffel Steel Products v. Delta Brands*, 387 F. Supp. 2d 794, 807-10 (N.D. Ill. 2005) (Cole, M.J.), the court held, *inter alia*, that the defendant's retained expert offered opinions which were not reliable and therefore inadmissible, because those opinions were based upon unreliable hearsay evidence of defendant's employees. Even if the DOJ's consultants and inspectors who contributed to the report were available to provide testimony based on their observations of conditions at the jail in June and July 2007, these individuals would not be able to provide a true and accurate description of conditions or operations at the jail or Cermak during the time period relevant to Plaintiff's complaint, October 18, 2007 to August 8, 2008.

"[Federal Rule of Evidence] 704 does not allow expert opinions containing 'legal conclusions,' not because they involve an ultimate issue, but because they do not assist the trier of fact, and thus are not 'otherwise admissible.'" *Richman v. Sheahan*, 415 F. Supp. 2d 929, 945 n.15 (N.D. Ill. 2006) (Cole, M.J.) (citing *West v. Waymire*, 114 F.3d 646, 652 (7th Cir.1997)).

Here, Plaintiff seeks to use the DOJ Report's conclusion that certain practices of CCDOC and Cermak are unconstitutional to avoid the need to separately allege and prove that the County Defendants knew about unconstitutional treatment of Aleman and other inmates. Outside of references to the DOJ Report, the Second Amended Complaint's "Factual Allegations (¶¶ 15-68) make so allegation that any of the County Defendants were aware of unconstitutional practices.

To permit Plaintiff to substitute the DOJ Report for this Court's judgment on the legal questions of (a) whether there were unconstitutional practices in CCDOC or Cermak and (b) whether the County Defendants knew or should have known about them, would amount to a gross misapplication of Rule 704 and the other rules relating to expert testimony. For these

reasons, Plaintiff's references to the DOJ Report, and the DOJ Report itself, should be stricken from the Second Amended Complaint and barred from later reintroduction.

### E. This Court should bifurcate and stay discovery on *Monell* topics unless and until there is a finding of liability on the other claims against the County Defendants.

This Court may order a separate trial for one or more separate issues or claims "[f]or convenience, to avoid prejudice, or to expedite or economize." Fed. R. Civ. P. 42(b). "The ultimate decision to bifurcate under Rule 42(b) is at the court's discretion . . ." *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1998). *See also Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). If this Court is disinclined to dismiss Plaintiff's claim against the County Defendants, then, in order to expedite proceedings, it should bifurcate and stay discovery on Plaintiff's *Monell* claim (Count IX) until it is shown that the allegation of County Defendants' liability is sufficiently supported by evidence, and is more than a mere tack-on to Plaintiff's Complaint.

It is well-settled that governmental employees cannot be held liable in their official capacities in a 42 U.S.C. § 1983 action unless the plaintiff can show that he suffered injuries of a constitutional magnitude as the result of an official policy, custom or practice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). The Supreme Court stated in *Monell*:

> [A] local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that a government as an entity is responsible under Section 1983.

*Monell*, 436 U.S. at 694. Plaintiff must allege a "specific pattern or series of incidents that support the general allegation" that a policy, custom or practice was in existence in the governmental entity. *Hossman v. Blunk*, 784 F.2d 793, 796 (7th Cir. 1986).

> The case law has identified three instances in which a municipality can be said to have violated the civil rights of a person because of its policy: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) "a widespread practice that, although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law,'"; or (3) an allegation that the constitutional injury was caused by a person with "final policymaking authority."

*Baxter v. Vigo County School Corp.*, 26 F.3d 728, 735 (7th Cir. 1994) (citations omitted). Further, Plaintiff must show that County Defendants' policy or practice is the "direct cause" or "moving force" of his alleged constitutional injury. *See Minix*, 597 F.3d at 832 (7th Cir. 2010).

In the case at bar, bifurcation of the *Monell* issue would expedite and economize this Court's proceedings in accordance with Rule 42(b). Indeed, bifurcating and staying the *Monell* count would serve to avoid potentially expensive discovery and litigation that would be for naught if Plaintiff is unable to establish that County Defendants are liable for a constitutional violation. "Litigating *Monell* claims can be time consuming and expensive[.]" James G. Sotos, *City's Practices Didn't Cause Officer's Use of Force*, Chicago Daily Law Bulletin, August 12, 2010, at 5. This potentially unnecessary expense would be borne by the taxpayers of Cook County. Even at this early stage of litigation, Plaintiff has already demonstrated willingness to subject County Defendants to broad, burdensome, and voluminous discovery requests pertaining to the *Monell* claim that could ultimately serve futile if he is unable to show liability.[2]

Further, Plaintiff relies solely on a Department of Justice report that is potentially inadmissible for his *Monell* claim. *See Hart v. Dart*, 03 CV 1768, Dkt. 239 (N.D. Ill. Sept. 11,

---

[2] In his Request for Production, Plaintiff requested "[a]ny and all documents concerning or relating to the July 11, 2008 Letter from the United States Department of Justice," and "any and all documents concerning or relating to investigations, studies, examinations, inquires, analyses, inspections, evaluations, and/or critiques by Cook County or any third party concerning or relating to medical treatment provided or not provided to inmates," (Pl.'s Req. for Produc. ¶¶ 15-16.) Plaintiff further requested "[a]ny and all Documents concerning or relating to the standard operating procedures of the Cook County Department of Corrections," and Cermak Health Services. (Pl.'s Req. for Produc. ¶¶ 34, 37.)

2009). The DOJ Report constitutes inadmissible opinion testimony, with a foundation based on hearsay. *See Anderson*, 657 F. Supp. at 1579; *Loeffel Steel Products* 387 F. Supp.2d 807-10. Plaintiff attempts to place massive discovery requests pertaining to the *Monell* claim atop the already shaky foundation of the DOJ Report that will likely collapse under scrutiny.

Discovery for any surviving non-*Monell* counts in Plaintiff's Complaint would also be expedited if the *Monell* claim is stayed pending a finding of liability on behalf of County Defendants. Bifurcating and staying the time-consuming and expensive discovery in the *Monell* count would expedite discovery on the other surviving counts and prevent waste, because *Monell* liability cannot be found unless there is a finding of liability for a constitutional violation. *See Monell*, 436 U.S. at 690; *See also Spanish Action Comm. of Chicago v. City of Chicago*, 766 F.2d 315 (7th Cir. 1985).

### III. CONCLUSION

For the above reasons, this Court should dismiss, with prejudice, Plaintiff's Second Amended Complaint against the County Defendants – Hart, Fagus, Puisis, and Cook County. In the alternative, the Court should strike all references to the DOJ Report and bar its use, and also order discovery of *Monell* topics be bifurcated and stayed.

Respectfully submitted,

ANITA ALVAREZ  
Cook County State's Attorney

By: /s/Patrick Smith  
Patrick Smith  
Deputy Supervisor  
Conflicts Counsel  
69 West Washington, Suite 2030  
Chicago, Illinois 60602  
(312) 603-1422