**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ALVARO ALEMAN,

Plaintiff,

v.

THOMAS DART, in his individual capacity; THOMAS DART, in his official capacity as Sheriff of Cook County, Illinois; SALVADOR GODINEZ, in his individual capacity; SALVADOR GODINEZ, in his official capacity as Director of the Cook County Department of Corrections; AVERY HART, in his individual capacity; AVERY HART, in his official capacity as Medical Director of Cermak Health Services; DAVID FAGUS, in his individual capacity; and MICHAEL A. PUISIS in his official capacity as Chief Operating Officer of Cermak Health Services; COOK COUNTY, ILLINOIS,

Defendants.

Case No. 09 C 06049

Hon. Judge Robert M. Dow, Jr.

Magistrate Judge Nan R. Nolan

**PLAINTIFF' CONSOLIDATED RESPONSE TO DEFENANTS' MOTIONS TO DISMISS OR TO BIFURCATE *MONELL* CLAIMS**

This Court should deny the Motions to Dismiss filed by Defendants Thomas Dart and Salvador Godinez (the "Sheriff Defendants") and Avery Hart, David Fagus, Michael Puisis, and Cook County, Illinois (the "County Defendants"), because on February 9, 2010, the Court ruled that substantially identical allegations were sufficient to state claims against Defendants Dart, Hart and Fagus. Defendants have not presented any reason, much less a compelling reason, for the Court to reconsider its prior ruling, or why that ruling does not apply to Defendant Godinez. As demonstrated below, Plaintiff adequately alleges claims against each of the Defendants in both their individual and official capacities.

This Court should also deny the County Defendants' Motion to Bifurcate the *Monell* claims, because a bifurcation order would serve no useful purpose and would grind this litigation

to a halt. Finally, this Court should deny the County Defendants' improper and premature motion to strike the DOJ Report, because evidentiary issues are not the proper subject of a Federal Rule of Civil Procedure 12(b)(6) motion. Defendants' improper motions are nothing more than a weak effort to delay discovery on the bulk of Plaintiff's claims and should be rejected.

**BACKGROUND**

From December 6, 2006 through August 8, 2008, Plaintiff was a pretrial detainee at the Cook County Jail ("CCJ"). (Sec. Am. Compl., D.E. 55 at ¶¶ 5, 15.) On October 18, 2007, Plaintiff slipped while descending a flight of stairs and suffered a severe fracture in his left middle finger. (*Id.* at ¶¶ 19, 23.) Due to the actions and inactions of Defendants, Plaintiff did not receive necessary medical attention after the accident, and the injury to Plaintiff's hand was never properly treated. (*Id.* at ¶¶ 20-62.) As a result, Plaintiff has suffered and continues to suffer considerable pain and has substantially lost the use of his left hand. (*Id.* at ¶ 2.)

Plaintiff's lawsuit is based on allegations that the care he received at the CCJ fell below the minimum standards of care mandated by the United States Constitution. Despite suffering a serious injury to his hand in October 2007, Plaintiff was not taken to the only place that had sufficient medical facilities to treat his injury, Stroger Hospital, until December 3, 2007 – *six weeks after he broke his hand*. (*Id.* at ¶¶ 19-36.) Plaintiff has alleged that Defendants' failure to enact procedures and adopt safeguards to prevent the denial of adequate medical care to pretrial detainees, such as Plaintiff, is the direct cause of Plaintiff's injuries. (*Id.* at ¶¶ 70-77, 79-86, 88-95, 97-104, 106-12, 114-20, 122-28, 130-36, 138-47.)

The factual bases for Plaintiff's case rests, in part, on a comprehensive report issued by the United States Department of Justice (the "DOJ Report"), which details a "myriad of

unconstitutional practices" applicable to Plaintiff's situation and concludes that the CCJ "is not adequately providing for the safety and well-being of inmates." (D.E. 55 ¶ 64; DOJ Report, D.E. 55-1 at 3 & 5.) The DOJ Report reflects Defendants' long history of knowingly violating the constitutional rights of inmates housed at the CCJ.

Defendants now move to dismiss the Second Amended Complaint ("Complaint") for failure to state a claim against them in their individual and official capacities (Sheriff Defs.' Mot. to Dismiss, D.E. 65 at 4-13; County Defs.' Mot. to Dismiss, D.E. 68 at 3-8), despite the fact that this Court has already ruled that an earlier version of the complaint adequately stated claims against Defendants Dart, Hart, and Fagus. (Feb 9, 2010 Order, D.E. 23.) Alternatively, the County Defendants move to strike Plaintiff's references to the DOJ Report and to bifurcate and stay discovery on the *Monell* claims. (D.E. 68 at 9-15.) In the interest of efficiency and economy, Plaintiff submits this consolidated response to both motions. As explained below, with one minor exception, Defendants' Motions lack merit and should be denied.

## ARGUMENT

### I. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive dismissal, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), in order to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). The Court accepts as true all of the well-pleaded facts alleged by the

plaintiff and all reasonable inferences that can be drawn therefrom. *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005). Under these standards, Plaintiff's allegations are more than sufficient to withstand Defendants' Motions.

## II. Defendants' Motions to Dismiss Should Be Denied

Section 1983 creates a cause of action against any person who, acting under color of law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The Section 1983 claims of a pretrial detainee are analyzed under the Fourteenth Amendment's Due Process Clause. *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 301 at n.2 (7th Cir. 2010).

Government actors may be liable for violations of Section 1983 in either their individual or official capacities. The Complaint states causes of action against Defendants Dart, Godinez, and Hart in both capacities, against Fagus in his individual capacity, against Puisis in his official capacity, and against Cook County under *Monell v. Department of Social Services of New York,* 436 U.S. 658 (1978). As discussed below, Plaintiff alleges sufficient facts to support each of these claims.

### A. Plaintiff Has Adequately Stated A Cause Of Action Against Defendants In Their Individual Capacities

Defendants Dart, Godinez, Hart, and Fagus argue that Plaintiff failed to state a claim against them in their individual capacities. (D.E. 65 at 4-13; D.E. 68 at 3-8.) As shown below, Defendants' arguments lack merit, but more fundamentally, they are barred by the "law of the case" doctrine.

#### 1. This Court's Ruling That Plaintiff Has Stated Claims Against Defendants In Their Individual Capacity Is Binding On All Of The Defendants.

Under the law of the case doctrine, a party may not ask a court to reconsider an issue that has been decided earlier in the same action. *South Beach Beverage Co. v. Rush Beverage Co.,*

*Inc.*, No. 01 C 5684, 2004 WL 416358, at *2 (N.D. Ill. Feb. 20, 2004) (holding that a court's earlier rulings are "binding on subsequent stages of the case"). This rule reflects the sound public policy that, absent compelling circumstances, a court generally should "refuse to reopen what has been decided." *In re Winters*, No. 96 C 7117, 1999 WL 281083, at *4 (N.D. Ill. 1999); *see also Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982) ("a court ordinarily will not reconsider its own decision made at an earlier stage of the trial or on a prior appeal, absent clear and convincing reasons to reexamine the prior ruling"). The doctrine "applies to issues decided by necessary implication as well as explicitly." *In re Winters*, 1999 WL 281083, at *4.

Defendants Dart, Godinez, Hart, and Fagus now seek a ruling that Plaintiff did not state a claim against Defendants in their individual capacities. In doing so, Defendants ignore this Court's prior order, which rejected the very same argument. On February 9, 2010, this Court conducted a preliminary review of the First Amended Complaint, pursuant to 28 U.S.C. § 1915A. (D.E. 23.) In performing the review, the Court necessarily applied the same legal standard applicable to a Rule 12(b)(6) motion. *Lagerstrom v. Kingston*, 463 F.3d 621, 624 (7th Cir. 2006). In finding that Plaintiff had sufficiently stated claims against Defendants Dart, Hart and Fagus in their individual capacities, this Court stated as follows:

> As noted by Defendants in their motion to dismiss[1], to state a claim against Defendants in their individual capacities, Plaintiff must allege personal involvement with the constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) . . . "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry*, 65 F.3d at 561.
>
> Plaintiff's [first] amended complaint adds that (i) inmates, including Plaintiff, submitted grievances for lack of adequate medical care; (ii) there was a widespread practice of not providing adequate care to inmates, yet Defendants did nothing to resolve it; and (iii) Dart, Fagus, and Hart knew or should have known about Plaintiff's hand condition, yet provided no relief. By virtue of their positions as sheriff, administrator of the prison hospital, and the CCDOC's

[1] In this same Order, the Court denied Defendants' similar motion to dismiss as moot. (D.E. 23 at 2.)

> medical director, Dart, Fagus, and Hart realistically can be expected to know about or participate in creating systematic conditions related to the provision of medical care to inmates. See *Duncan v. Duckworth*, 644 F.2d 653, 655 (7th Cir. 1981) (reversing dismissal of deliberate indifference claim against prison hospital administrator, reasoning that "his position * * * justifies the inference at this stage of the proceeding that he does bear some responsibility for the alleged misconduct"); *Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) ("defendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systematic jail conditions"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1429 (7th Cir. 1996) (refusing to dismiss individual capacity claims against sheriff and director of CCDOC that alleged "systematic violations for which the Sheriff and the Director can be expected to have responsibility"). ***Here, Plaintiff's claims are based on potentially systematic conditions for which Defendants Dart, Fagus, and Hart can be inferred to bear some responsibility.*** . . . Therefore, Plaintiff has stated claims against Defendants Dart, Fagus, and Hart, as well as Cook County, such that he may proceed with his claims against these Defendants at this time.

(D.E. 23 at 2 (emphasis added).) Plaintiff's current Complaint is substantially the same as the complaint that was the subject of the February 9, 2010 Order. (*Compare* First Am. Compl., D.E. 25 ¶¶ 52-56 *with* Sec. Am. Compl., D.E. 55 ¶¶ 106-12, 122-28; *compare* D.E. 25 ¶¶ 66-71 *with* D.E. 55 ¶¶ 70-77.)

Furthermore, the allegations against Defendant Godinez are substantially the same as those reviewed in this Court's February 9, 2010 Order as against Defendant Dart. (*Compare* D.E. 25 ¶¶ 66-71 *with* D.E. 55 ¶¶ 88-95.) As such, this Court's prior decision is binding on Defendant Godinez. *U.S. v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999) ("when a rule of law has been decided adversely to one or more codefendants, the law of the case doctrine precludes all other codefendants from relitigating the legal issue").

Defendants have made no effort to explain why the Court should revisit the issues decided in the February 9, 2010 Order. Defendants are not entitled to a second bite at the apple merely because Plaintiff, through newly-appointed counsel, has elected to file an amended complaint.

2. Plaintiff Has Adequately Stated A Cause Of Action Against Defendants In Their Individual Capacities.

Preclusion aside, Defendants' Motions to Dismiss the individual capacity claims should be denied on the merits. To state a claim against Defendants in their individual capacities, Plaintiff must allege personal involvement with the constitutional violation. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of Section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Id*. "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988). "In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." *Gentry*, 65 F.3d at 561. Plaintiff's allegations unquestionably meet these standards.

Plaintiff has properly alleged an individual capacity claim against:

- Defendant Dart—by alleging that Dart was responsible for ensuring that inmates, including Plaintiff, received adequate medical care, that Dart knew inmates were not receiving adequate medical treatment, that Dart failed to implement or enforce policies and procedures to correct this problem, and that Dart's failure was a cause of Plaintiff's injury. (D.E. 55 ¶¶ 70-77.)
- Defendant Godinez—by alleging that Godinez was responsible for ensuring that inmates, including Plaintiff, received adequate medical care, that Godinez knew inmates were not receiving adequate medical treatment, that Godinez failed to implement or enforce policies and procedures to correct this problem, and that Godinez's failure was a cause of Plaintiff's injury. (D.E. 55 ¶¶ 88-95.)

- Defendant Hart—by alleging that Hart was responsible for ensuring that inmates, including Plaintiff, received adequate medical care, that Hart knew inmates were not receiving adequate medical treatment, that Hart failed to implement policies and procedures to correct this problem, and that Hart's failure was a cause of Plaintiff's injury. (D.E. 55 ¶¶ 106-12.)
- Defendant Fagus—by alleging that Fagus was responsible for ensuring that inmates, including Plaintiff, received adequate medical care, that Fagus knew inmates were not receiving adequate medical treatment, that Fagus failed to implement policies and procedures to correct this problem, and that Fagus' failure was a cause of Plaintiff's injury. (D.E. 55 ¶¶ 122-28.)

This is all that was required to state a claim against Defendants in their individual capacities. (D.E. 23 at 2 ("Plaintiff's claims are based on potentially systemic conditions for which Defendants Dart, Fagus and Hart can be inferred to bear some responsibility")); *see also Terry v. Cook County Dep't of Corrections*, No. 09 C 3093, 2010 WL 331720, at *3 (N.D. Ill. Jan. 22, 2010) (Dow, J.) ("if [a] supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act") (citing *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998)); *Thomas*, 604 F.3d at 303 (stating that failure to enact, implement and enforce policies to correct constitutional violations is actionable).

Perhaps realizing that Plaintiff has met his burden at the pleadings stage, both the Sheriff Defendants and the County Defendants embark on efforts to disprove Plaintiff's allegations and point the finger at each other. Indeed, both sets of Defendants cite the same case – *Burks v. Raemisch*, 555 F.2d 592 (7th Cir. 2009) – for the proposition that Defendants should not be held

liable for each other's misconduct. (D.E. 65 at 7-8; D.E. 68 at 8.) Ironically, both sets of Defendants cite the same paragraph of the DOJ Report to identify their supposed limited responsibilities and to disclaim responsibility for Plaintiff's injuries. (*Compare* D.E. 65 at 4 *with* D.E. 68 at 7-8.) However, Defendants conveniently omit the portion of the same paragraph that demonstrates Defendants' *joint* responsibility for the provision of medical care to inmates:

> Although health care and security issues require a degree of separation in all correctional facilities, . . . the complete division between corrections and health care operations at CCJ results in serious administrative problems, including increased frustration, communication breakdowns, and finger-pointing. Regardless of the administrative division, ***Cook County and the Cook County Sheriff's Office are responsible for the well-being of CCJ inmates, including providing adequate care for inmates' serious medical and mental health care needs***.

(D.E. 55-1 at 4 (emphasis added for the language Defendants omitted in their citations).) Defendants' conflicting arguments about who is responsible for Plaintiff's injuries need not detain the Court long. Plaintiff's allegations establish that each of the Defendants bears some responsibility for Plaintiff's injuries. The question of who will ultimately be held responsible is a question for a later date. Defendants' Motions to Dismiss the individual capacity claims should be denied.

### B. Plaintiff Adequately Has Stated A Cause Of Action Against Defendants In Their Official Capacities

For the reasons set forth above, this Court should also deny Defendants' Motions to Dismiss the official capacity claims. To demonstrate that the County or officials acting in their official capacities are "liable for a harmful custom or practice, the plaintiff must show that [defendants] were 'deliberately indifferent as to [the] known or obvious consequences.'" *Thomas*, 604 F.3d at 303 (citing *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)). "In other words, they must have been aware of the risk created by the custom or practice and must have failed to take appropriate steps to protect the plaintiff. Therefore, in situations where

rules or regulations are required to remedy a potentially dangerous practice, the County's failure to make a policy is also actionable." *Id*. Plaintiff's allegations meet these standards.

Throughout the Complaint, Plaintiff alleged that Defendants repeatedly have failed to provide adequate medical treatment to the CCJ inmates, that they failed to enact, implement and enforce policies and procedures to ensure that inmates would receive adequate medical care, and that these failures were the cause of Plaintiff's injuries. (D.E. 55 ¶¶ 6, 7, 9-12, 64-66, 79-86, 97-104, 114-20, 130-36, 138-47.) Accepting these allegations as true, as the Court must on a Rule 12(b)(6) motion, Plaintiff's Complaint easily survives Defendants' Motions.

The Sheriff Defendants also complain that Plaintiff has failed to identify the precise policy or procedure that caused Plaintiff's injury. (D.E. 65 at 9, 12-13.) This argument is disingenuous, at best, because Defendants steadfastly have refused to participate in the discovery process, forcing Plaintiff to file a motion to compel. (D.E. 75.) Moreover, the Sheriff Defendants misapprehend Plaintiff's burden at this stage of the litigation. As one court explained, "Plaintiff is not required to meet a heightened pleading standard for a § 1983 official-capacity claim." *Garrett v. Dart*, No. 09 C 1398, 2010 WL 2136670, at *3 (N.D. Ill. July 8, 2010) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993); *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir. 2006)). "Thus, Plaintiff need not plead particular facts upon which he bases his claim of an official policy or custom, and a 'short and plain statement' that a government entity's official policy or custom caused his injury is sufficient to survive a motion to dismiss." *Garrett*, 2010 WL 2136670, at *3

Moreover, Defendants ignore Plaintiff's allegations when they suggest that Plaintiff's claim is based on a single failure as opposed to an established pattern or practice of conduct. (D.E. 65 at 10-11; D.E. 68 at 6-7.) The Complaint details a consistent pattern of failure to

schedule medical appointments, failure to take Plaintiff to medical appointments, failure to reschedule missed appointments, and an overall failure to treat Plaintiff's serious medical injury over the course of ten months until Plaintiff was transferred to Shawnee Correctional Center. (D.E. 55 ¶¶ 20-62.) The DOJ Report establishes that Plaintiff's predicament was not an isolated occurrence caused by random events, but rather, it was the product of the "myriad of unconstitutional practices" described in the DOJ Report:

> [Cook County Jail ("CCJ")] fails to provide adequate and timely acute care to inmates with serious or potentially serious acute medical conditions. CCJ's acute care services substantially depart from generally accepted medical care standards. We identified grossly inadequate acute care that led to prolonged suffering and premature deaths of inmates at CCJ. ***Acute care was so deficient that inmates suffered needlessly because medical staff failed to ensure that inmates met scheduled appointments,[2] failed to monitor acute conditions, and failed to timely treat inmates' conditions. We found numerous instances where CCJ's failure to adequately assess and treat inmates likely contributed to preventable deaths, amputation, hospitalizations, and unnecessary harm.***

(D.E. 55-1 at 46 (emphasis added).)

The DOJ's comprehensive investigation culminated in a lawsuit filed earlier this year styled *United States of America v. Cook County*, No 10 C 2946 (N.D. Ill.) ("AG Complaint"), attached as Exhibit A. In that lawsuit, the Attorney General sought an injunction to prevent Cook County, Sheriff Dart, and others from "depriving persons incarcerated at [CCJ] of rights, privileges or immunities secured and protected by the Constitution of the United States." (AG Compl. ¶ 1.) The AG Complaint alleges that "Defendants have repeatedly and consistently disregarded known or serious risks of harm to inmates at CCJ, as detailed in the [DOJ Report]." (*Id*. at ¶ 15.) According to the Attorney General, "[t]he factual allegations . . . outlined in the [DOJ Report] have been obvious and known to Defendants for a substantial period of time, yet Defendants have failed to adequately address the conditions described." (*Id*. at ¶ 21.)

---

[2] The Sheriff Defendants' assertion (D.E. 65 at 11) that the DOJ Report "does not address any failures by the CCDOC to take inmates to medical facilities" is demonstrably false.

Unlike the situation here, Sheriff Dart and the other defendants in that case elected not to challenge the Attorney General's allegations that they were aware of and disregarded unconstitutional practices at the CCJ. Instead, those defendants entered into an Agreed Order which sets forth a myriad of actions that Cook County and Sheriff Dart are required to take to remedy the conditions found in the DOJ Report.[3] Plaintiff's allegations, which incorporate the DOJ Report, are not materially different than those set forth in the AG Complaint. Like the Attorney General, Plaintiff properly has alleged the existence of a harmful custom or practice known to each of the Defendants. Defendants' Motions to Dismiss the official capacity claims lack merit and should be denied.

## III. <u>The County Defendants' Motion to Bifurcate Should Be Denied</u>

The County Defendants' Motion to Bifurcate should be denied because bifurcation would serve no useful purpose and would grind this litigation to a halt. Rule 42(b) authorizes federal courts to order bifurcation of discovery and/or trial of one or more separate issues or claims, if bifurcation is warranted "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). "The district court has considerable discretion to order the bifurcation of a trial," and its decision will be overturned "only upon a clear showing of abuse." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000) (citations omitted). The County Defendants have not—and cannot—show that bifurcation is appropriate under these standards.

The County Defendants argue that this Court "should bifurcate and stay discovery on Plaintiff's *Monell* claim (Count IX) until it is shown that the allegation of County Defendants' liability is sufficiently supported by evidence, and is more than a mere tack-on to Plaintiff's Complaint." (D.E. 68 at 13.) This argument is nonsensical for at least two reasons. First, as

---

[3] The section of the Agreed Order dealing with the provision of medical care to inmates is 17 pages long. (Agreed Order attached as Exhibit B, at 20-37.)

even the Sheriff Defendants have recognized, all of Plaintiff's claims are based on the same facts as the *Monell* claims. (D.E. 65 at 2: "All of the Plaintiff's various claims . . . are based on existing policies or customs and practices that allegedly were the moving force behind the constitutional violations to Plaintiff.") Thus, an Order preventing Plaintiff from conducting discovery into Defendants' unconstitutional policies and practices would be tantamount to an order staying discovery on all claims—a result contrary to the purpose of Rule 42(b).

Second, and more importantly, the County Defendants' argument ignores binding Seventh Circuit precedent and a recent opinion from this Court, which put to rest the same arguments the County Defendants attempt to make here. The Seventh Circuit's decision in *Thomas* made it crystal clear that a municipality may be held liable for a constitutional violation even where no individual officers were found liable. *Thomas*, 604 F.3d at 305 (7th Cir. 2010). Accordingly, the County Defendants' argument that "bifurcating and staying *Monell* discovery would serve to avoid potentially expensive discovery and litigation that would be for naught if Plaintiff is unable to establish that County Defendants are liable for a constitutional violation" should be summarily rejected. *Terry v. Cook County Dep't of Corrections*, No. 09 C 3093, 2010 WL 2720754, at *2-3 (N.D. Ill. July 8, 2010) (Dow, J.) (rejecting motion to bifurcate based on the holding in *Thomas*); *Bradley v. City of Chicago*, No. 09 C 4538, 2010 WL 432313, at *2 (N.D. Ill. Feb. 3, 2010) (same); *Bell*, 2010 WL 432310, at *2 (same).[4]

It is telling that the County Defendants do not cite *Thomas* or any of the post-Thomas cases examining when a bifurcation order is appropriate in the context of Section 1983 claims.

---

[4] While this Court has both granted and denied motions to bifurcate *Monell* claims (*see Elrod v. City of Chicago*, No. 06 C 2505, 2007 WL 3241352, at *2 (N.D. Ill. Nov. 1, 2007) (collecting cases)), the cases granting bifurcation were excessive force cases decided based on *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), "before the Seventh Circuit provided relevant guidance in *Thomas*." *Bell*, 2010 WL 432310, at *4. Conversely, all three cases analyzing bifurcation of *Monell* claims decided post-*Thomas* have denied bifurcation, based on the holding in *Thomas*. *Terry*, 2010 WL 2720754, at *2-3 (Dow, J.); *Bradley*, 2010 WL 432313, at *2; *Bell*, 2010 WL 432310, at *2.

The County Defendants' Motion to Bifurcate and stay *Monell* discovery lacks a basis in fact or law and should be denied.

## IV. Defendants Are Not Entitled To Qualified Immunity

While only the Sheriff Defendants raise the issue of qualified immunity, none of Defendants are entitled to it. Qualified immunity shields government officials when they are not on reasonable notice that their conduct violates clearly established constitutional rights. *Pearson v. Callahan,*129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). Plaintiff has alleged that Defendants were aware of constitutional violations but did nothing to prevent them. (D.E. 55 ¶¶ 64-68, 72-76, 90-94, 108-11, 124-27.) These allegations are supported by the DOJ's preliminary findings communicated to the Sheriff Defendants in July of 2007 (*Id.* at ¶ 68), three months before Plaintiff's accident, which clearly put Defendants on notice of alleged constitutional violations. Indeed, the record reflects that the Sheriff Defendants have been on notice of constitutional violations at the CCJ since at least 1974. *Duran v. Dart*, No. 74 C 2949, (N.D. Ill. Apr. 9, 1982) (consent decree entered). In any event, the extent to which the Sheriff Defendants knew of their misconduct is not the proper subject of a Rule 12(b)(6) motion. *See Bergt v. McDougal Littell*, 661 F. Supp. 2d 916, 923 (N.D. Ill. 2009).

## V. References To The DOJ Report Should Not Be Stricken

The County Defendants seek an Order striking all references to the DOJ Report from the Complaint, because, according to the County Defendants, the DOJ Report (1) is inadmissible at trial under the hearsay rule, (2) is not relevant to Plaintiff's personal experiences or treatment at the CCJ, and (3) is inadmissible at trial as improper opinion testimony. (D.E. 68 at 9-13.) Notably, the County Defendants cite no case law in support of their extraordinary and premature request to curtail Plaintiff's trial presentation at the pleadings stage, because there is none. This Court should decline the County Defendants' invitation to address trial-related issues on a Rule

12(b)(6) motion. *Gibson*, 910 F.2d at 1520 (The purpose of Rule 12(b)(6) is to test the sufficiency of the complaint, not the merits of the case). If the County Defendants wish to limit the use of the DOJ Report at trial, they may properly do so through a motion *in limine*.

**VI. Plaintiff's Claims For Punitive Damages In Counts II, IV, VI, and VIII.**

Defendants' are correct that Plaintiff may not recover punitive damages against Cook County or against Dart, Godinez, Hart, and Puisis in their official capacities. Therefore, Plaintiff withdraws his request for punitive damages in Counts II, IV, VI, and VIII. Plaintiff maintains his claim for punitive damages as to Counts I, III, V, and VII.

## CONCLUSION

WHEREFORE, for the reasons set forth above, Plaintiff Alvaro Aleman respectfully requests an Order:

(i) denying the two motions to dismiss filed by Defendants in their entirety;

(ii) denying the Sheriff Defendants' request for qualified immunity;

(iii) denying the County Defendants' motion to bifurcate *Monell* discovery;

(iv) denying the County Defendants' motion to strike allegations pertaining to the DOJ Report; and

(v) granting such further relief as the Court deems appropriate under the circumstances.

DATED: September 16, 2010

ALVARO ALEMAN

By: __s/ Ashlee M. Knuckey______
One of His Attorneys

Steven T. Whitmer (# 06244114)
Ernesto R. Palomo (# 06278186)
Ashlee M. Knuckey (# 6300237)
LOCKE LORD BISSELL & LIDDELL LLP
111 S. Wacker Drive
Chicago, IL 60606
Direct: (312) 443-0694 (A.M. Knuckey)
Fax: (312) 896-6694 (A.M. Knuckey)
*Attorneys for Plaintiff Alvaro Aleman*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 16, 2010, I electronically filed the foregoing "PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS OR TO BIFURCATE *MONELL* CLAIMS" with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

**Kent Stephen Ray**
kent.ray@cookcountyil.gov

**Patrick Stephen Smith**
patrick.smith@cookcountyil.gov

**Nicholas S. Scouffas**
nicholas.scouffas@cookcountyil.gov

s/ Ashlee M. Knuckey
Ashlee M. Knuckey

Ashlee M. Knuckey (# 6300237)
LOCKE LORD BISSELL & LIDDELL LLP
111 S. Wacker Drive
Chicago, IL 60606
Direct: (312) 443-0694 (A.M. Knuckey)
Fax: (312) 896-6694 (A.M. Knuckey)

*Attorney for Plaintiff Alvaro Aleman*