IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALVARO ALEMAN, | ) | |
|     Plaintiff, | ) | 09 CV 6049 |
| | ) | |
| v. | ) | Honorable Judge |
| | ) | Robert M. Dow, Jr. |
| COOK COUNTY DEPARTMENT OF | ) | |
| CORRECTIONS, THOMAS DART, *et al.*, | ) | |
|     Defendants. | ) | |

**REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

**NOW COME** Defendants Dr. Avery Hart, Dr. David Fagus, Dr. Michael Puisis, and Cook County (the County Defendants), by their attorney, Anita Alvarez, State's Attorney of Cook County, through her Assistant, Patrick S. Smith, and state as follows in support of their motion to dismiss:

**I. The Motion to Dismiss Should be Granted**

**A. Plaintiff does not state individual capacity claims against the County Defendants.**

Plaintiff brings two individual capacity claims against County Defendants, Count V (against Dr. Hart) and Count VII (against Dr. Fagus). The crux of Plaintiff's accusations is that Dr. Hart and Dr. Fagus were responsible for ensuring that Plaintiff received adequate medical care. Plaintiff's Consolidated Response (Dkt. 81), however, ignores the County Defendants' argument that Plaintiff pled himself out of court with respect to these allegations. (*See* County Def's Mem. in Support of Mot. Dismiss, Dkt. 78, at 4-6).

Plaintiff's Consolidated Response cites several authorities that note individual liability allegations can sometimes survive a motion to dismiss when there is a basic allegation of unconstitutional systemic conditions under the defendant's control. (Dkt. 81, at 7-8.) However, the Plaintiff's response engages in obvious sleight-of-hand to avoid applying those authorities to

1

the specific facts of this case, namely the paragraphs of the Second Amended Complaint where he concedes that there is a division of responsibilities between the Sheriff and the County as it regards inmates' medical care at the Jail and Cermak's repeated efforts to help Plaintiff get the medical treatment he needed.

Plaintiff extends his sophistry to the repeated allegation that "the care he received at the [Jail] fell below the minimum standards of care mandated by the United States Constitution." (Dkt. 81, at 2.) Plaintiff's concedes that his injury was not treatable by the Cermak Health Services clinic at the jail. (Sec. Am. Compl., Dkt. 55, ¶ 24.) Plaintiff alleges that his injury required surgery and that the real basis for his constitutional claim stems from his not receiving that surgery. (Sec. Am. Compl., Dkt. 55, ¶ 2.) But, Plaintiff never alleges that Cermak has a constitutional duty to provide on-site surgical services nor that Cermak failed to provide the best treatment it could. Plaintiff does not even accuse John Stroger Hospital of providing less-than-adequate care. Instead, his entire claim boils down to not receiving *prompt transportation to adequate medical care*.

Of course, *transportation* to adequate care is a logical prerequisite to *receiving* adequate care, but Plaintiff obfuscates the issues of this case when he writes that the Sheriff and County have "*joint* responsibility for the provision of medical care to inmates." (Dkt. 81, at 9) (emphasis in original). He cites to the Department of Justice letter attached to his Second Amended Complaint for this proposition of "joint" responsibility, but the DOJ never says there is "joint" responsibility, only that "Cook County and [the Sheriff's Office] are responsible for . . . providing adequate care for inmates' serious medical . . . needs." (Sec. Am. Compl., Dkt. 55, Ex. A, Pt. 1, at 4.)

Yet, as the DOJ recognized, there is a partial division of duties between the Sheriff and the County medical personnel. *Id.* ("All corrections and security functions at [the Jail] are administered by the . . . Sheriff."). Cermak has the duty to treat inmates who are brought to its clinic or make referrals to off-site medical treatment. The Sheriff has the duty to ensure that inmates who require medical care are physically able to receive it, including transporting the inmate to Cermak or off-site treatment.

Here, the Plaintiff *only* alleges a failure to transport, which, as his own incorporated exhibit notes, is a duty solely within the Sheriff's portfolio. Plaintiff makes no allegation that Cermak failed to provide him with adequate on-site treatment or failed to make clear to the Sheriff's personnel that he required transportation to Stroger Hospital for surgery.

Indeed, Plaintiff's recitation of the alleged facts in his Second Amended Complaint lists at least thirteen discrete instances when Cermak scheduled surgical appointments for the Plaintiff at Stroger Hospital, but those appointments were canceled by the Sheriff or Stroger, or the Sheriff simply didn't take Plaintiff to the appointments (Plaintiff further alleges three incidents where Cermak provided basic treatment for pain and infection as best it could in lieu of the surgery). (*See* County Defs' Mem. in Support of Mot. Dismiss, Dkt. 78, at 5). In the Plaintiff's *own words*, Cermak "strongly and explicitly urged for Plaintiff to be provided with surgery 'ASAP.'" (Sec. Am. Compl., Dkt. 55, ¶ 41.) That Cermak's urging may have fallen on deaf ears is, *according to Plaintiff's own pleadings*, not within Cermak's control.

Plaintiff's Consolidated Response puzzlingly claims that he has the right to maintain his suit against all defendants simply because the Sheriff Defendants and the County Defendants disagree as to which of them is responsible for the injuries Plaintiff alleges. (Dkt. 81 at 9.) But the question is not, as Plaintiff argues, "who will ultimately be held responsible[?]" *Id.* The

Case: 1:09-cv-06049 Document #: 93 Filed: 09/30/10 Page 4 of 10 PageID #:963

question on these motions to dismiss is "did the Plaintiff adequately state a claim upon which relief can be granted against *each* of the defendants?" To that end, it does not yet matter who *should* be responsible; all that matters is who Plaintiff's pleadings *assign* blame to (rightly or wrongly), which excludes the individual Cermak Health Services defendants from liability.

Whether or not Plaintiff adequately alleges that he suffered a constitutionally-cognizable injury while in the Sheriff's custody, his complaint's attachments and recitation of facts exculpate Cermak Health Services and, therefore, fail to state individual-capacity claims against Cermak's officers, Doctors Hart and Fagus. Plaintiff pled himself out of court by alleging facts that affirmatively demonstrate Cermak's lack of deliberate indifference.

**B. Plaintiff does not state official capacity claims against the County Defendants.**

**1.** <u>Doctors Hart and Puisis could not prevent Plaintiff's alleged constitutional injury.</u>

Plaintiff again ignores the facts contained in his own pleadings that specify that Cermak Health Services has no role in inmate transport, even for medical appointments. As noted above, Plaintiff's claim is *not* that he received inadequate care at Cermak. Instead, Plaintiff claims that he needed off-site medical care and the constitutional violation occurred when he was not transported to it.

Although Plaintiff's Consolidated Response refers to all Defendants together when addressing the official-capacity claims, his *post hoc* combination of the Defendants cannot overcome his pleadings' acknowledged division of the Defendants' powers and duties. (Dkt. 81, at 10.) Plaintiff's response argues that, ". . . Defendants repeatedly have failed to provide adequate medical treatment to the CCJ inmates [and] failed to enact, implement and enforce policies and procedures to ensure that inmates would receive adequate medical care. . ." This statement is completely at odds with the Second Amended Complaint's narrative describing

4

Cermak "strongly and explicitly urg[ing]" that Plaintiff receive surgery and the Sheriff failing to heed that advice and failing to transport Plaintiff to surgical appointments scheduled by Cermak. (*See* Dkt. 55, ¶¶ 23, 28, 31, 34, 38, 39, 41, 43, 47-49, 58-59.)

Plaintiff never alleges a failure to receive adequate treatment on any occasion when he actually saw medical personnel; his alleged constitutional deprivation relates only to not being transported to medical personnel as soon as he needed, where he needed, as often as he needed. Since there were no alleged failings by medical staff or medical policies, Plaintiff has failed to state a cause of action against the officers of Cermak Health Services, Dr. Hart and Dr. Puisis in their official capacities.

**2.** Cook County could not prevent Plaintiff's alleged constitutional injury.

The above logic also extends to the *Monell* claim against Cook County, as operator of Cermak Health services. Where the quality of the health care is not in dispute, only Plaintiff's access to it, then the liability for any resulting constitutional injuries lies solely with the party allegedly blocking that access; in this case, the Sheriff.

Cook County is not responsible under *Monell* for the actions of its Sheriff, because the Sheriff is independently elected and not an "employee" of the County. *See Carver v. Sheriff of LaSalle County*, 203 Ill. 2d 497, 787 N.E.2d 127, 136 (2003).[1]

**3.** In the alternative, Plaintiff's official capacity claims are redundant.

An official capacity suit is the same as a suit against the government agency for which the officer works. *Garrett v. Dart*, No. 09-cv-1398, 2010 U.S. Dist. LEXIS 67965, *7-8 (N.D. Ill. July 8, 2010) (Dow, J.) Therefore, claims against both the officer in his official capacity *and* the government agency for which he works under *Monell* are duplicative and grounds for

---

[1] The County is still a necessary party in any suit against the Sheriff in an indemnification capacity. *Carver v. Sheriff of LaSalle County*, 324 F.3d 947 (7th Cir. 2003).

5

dismissing one of the two. *Id.* Because Plaintiff is already suing Cook County, as overseer of the county hospitals (including Cermak), under *Monell*, this Court should dismiss Plaintiff's official capacity claims against Cermak's officers, Dr. Hart and Dr. Puisis.

**C. The "law of the case" doctrine does not bar dismissal.**

**1.** <u>This Court's §1915A screening does not have preclusive effect.</u>

Plaintiff argues that the law of the case doctrine prohibits Defendants from bringing a motion to dismiss for failure to state a claim because this Court already found that Plaintiff did state a claim when it conducted the preliminary review mandated by 28 U.S.C. § 1915A.

"The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit. But it is no more than a presumption, one whose strength varies with the circumstances; it is not a straitjacket." *Avitia v. Metropolitan Club*, 49 F.3d 1219, 1227 (7th Cir. 1995) (citations omitted). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States,* 440 U.S. 147, 153-54 (1979). "Law of the case" is similar to issue preclusion. 18-134 *Moore's Federal Practice - Civil* § 134.20[1].

Like other types of preclusion, the law of the case doctrine presumes that the party against whom it is being asserted had a full and fair opportunity to litigate the issue the first time. *See Montana,* 440 U.S. at 153-54. However, Plaintiff's attempt to assert the doctrine fails here because none of the Defendants have yet had an opportunity to raise arguments attacking the complaint. The Defendants' only prior motion to dismiss (Dkt. 16) was denied by this Court as

6

moot, without adjudication on its merits, in light of the Plaintiff's filing of a superseding complaint. (*See* Minute entry of Feb. 9, 2009, Dkt. 23.)

This Court later conducted its §1915A review *sua sponte*. But, although Plaintiff is correct that the same *standard of review* applies to §1915A screening and Rule 12(b)(6) motions, this does not mean that the same *arguments* were raised and considered. To assume that a neutral judge acting under §1915A will always contemplate the same arguments that a zealous, partisan lawyer would under Rule 12(b)(6) would obliterate the Defendants' right to raise a defense. The motions to dismiss are not, as Plaintiff accuses, "a second bite at the apple." (Dkt. 81, at 6.) The Defendants have yet to take any bite themselves.

Under Rule 12(b)(6), the Defendants have a right to challenge the sufficiency of the complaint and receive a ruling on the merits of their challenge. The Defendants had not fully exercised this right prior to the instant motions. In any case, it does not appear from the record that Judge Dow considered the primary argument that the County Defendants now raise, that Plaintiff's own exhibits and alleged facts plead him out of court. Thus, that argument is not barred as law of the case and Plaintiff's attempt to use §1915A as a shield against proper Rule 12(b)(6) analysis is not warranted by existing law.

**2.** As an *in forma pauperis* litigant, Plaintiff's case is subject to a different standard.

Plaintiff filed this case *in forma pauperis* (IFP) and this Court granted his motion. (Minute entry of Oct. 9, 2009, Dkt. 6.) As an IFP litigant, Plaintiff is subject to the operation of 28 U.S.C. § 1915(e)(2)(B)(ii), which provides ". . . the court shall dismiss the case **at any time** if the court determines that . . . the action . . . fails to state a claim on which relief may be granted" (emphasis added).

7

A complaint that survives §1915A screening by the district court may still be dismissed later by operation of §1915(e)(2)(B)(ii). *E.g.*, *Webber v. Fed. Bureau of Prisons*, 200 Fed. Appx. 335, 336 (5th Cir. 2006) (unpublished). The County Defendants do not contend that §1915(e)(2)(B) grants them the right to contumaciously file new motions to dismiss every month, but it does permit Defendants (and this Court, on its own motion) to seek an updated determination when the circumstances of the case change significantly. Here, more than six months passed between the Court's §1915A screening and the filing of the Defendants' motions to dismiss. In that time, Plaintiff and the County Defendants secured new counsel, Plaintiff filed a new complaint, and two new defendants were named and brought into the suit. The County Defendants believe these events constitute significant changes that, at the very least, severely weaken the presumption of law of the case preclusion against this IFP Plaintiff.

**3.** <u>Plaintiff's new complaint cannot benefit from rulings related to a prior complaint.</u>

Plaintiff's reliance on the law of the case doctrine is also bizarre in light of the subsequent filing of his Second Amended Complaint. Although the Plaintiff claims that the Second Amended Complaint "is substantially the same as" his First Amended Complaint, that statement does not hold water as regards the motions to dismiss. (Dkt. 81, at 6.) Among other differences, the First Amended Complaint contains no exhibits and its statement of facts is very different in detail from the Second Amended Complaint's.

The differences between the complaints regarding Cermak are especially striking. The Second Amended Complaint includes the letter from the Department of Justice that, ironically, explains the division of responsibility between the Sheriff and Cermak that undercuts his claims against Cermak. (*See* Sec. Am. Compl., Dkt. 55, Ex. A, at 4.) Further, most of Plaintiff's kind words about Cermak's personnel in the recitation of facts are absent from the First Amended

8

Complaint or in significantly different form. (*Compare* Sec. Am. Compl., Dkt. 55, ¶¶ 23, 31, 34, 39, 41, 43, 47-49 *with* First Am. Compl., Dkt. 25, ¶¶ 15-44.) Since the motion to dismiss argues that Plaintiff's new, specific factual allegations trump the boilerplate language in his listing of claims – thereby pleading himself out of court – the differences between the complaints are quite significant.

Even if Plaintiff's First Amended Complaint would have survived the instant motions to dismiss, the Second Amended Complaint now controls this case. The Second Amended Complaint differs in substance from the First and has not yet been reviewed under Rule 12(b)(6) or screened under §1915A. Because the active complaint alleges facts that show the County Defendants were not responsible for Plaintiff's alleged constitutional injury, it does not state a claim on which relief can be granted against the County Defendants and must be dismissed.

## II. The Motion to Strike Should be Granted

The Plaintiff's Consolidated Response (Dkt. 81) only argues that the County Defendants' motion to strike the Department of Justice letter (Sec. Am. Compl., Dkt 55, Ex. A), and references to it in the Complaint, is not a proper topic in a Rule 12 motion. That is incorrect.

Federal Rule of Civil Procedure 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter. The court may act: (1) on its own; or (2) on motion made by a party. . ." "Impertinence may be defined as a matter which is both irrelevant or unresponsive to the issues in an action and could not be put in issue or introduced into evidence." *City Federal Sav. & Loan Ass'n v. Crowley*, 393 F. Supp. 644, 659 (E.D. Wisc. 1975) (citing Moore's Federal Practice, ¶ 12.21, at 2421-2422 (2d ed. 1974)); *Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 553 (D. Haw. 1998) ("An

9

allegation is 'impertinent' when it is irrelevant and could not be put into evidence between the parties.").

Because the Plaintiff did not take issue with the County Defendants' arguments that the Department of Justice letter is irrelevant and inadmissible, the motion to strike should be granted.

### III. Bifurcation and Qualified Immunity Will Not Be Discussed

This Court referred the arguments relating to *Monell* bifurcation to Magistrate Judge Nolan. (Dkt. 89) Thus, the County Defendants will not address here the arguments made in the Plaintiff's response, but reserve the right to do so in front of Judge Nolan.

Plaintiff also argued in his Consolidated Response that none of the defendants are entitled to qualified immunity. (Dkt. 81, at 14.) Qualified immunity is an affirmative defense. *Stevens v. Umsted*, 131 F.3d 697, 707 (7th Cir. 1997). The County Defendants have not raised any affirmative defenses yet, but reserve the right to do so if this litigation continues and will not reply to Plaintiff's argument here.

### IV. Conclusion

For the above reasons, this Court should dismiss, with prejudice, Plaintiff's Second Amended Complaint against the County Defendants – Hart, Fagus, Puisis, and Cook County – in all capacities. In the alternative, the Court should strike all references to the Department of Justice letter and bar its use at trial.

                                                  Respectfully submitted,

ANITA ALVAREZ                           By:    /s/Patrick Smith
Cook County State's Attorney                 Patrick Smith
                                                              Deputy Supervisor
                                                               Conflicts Counsel
                                                               69 West Washington, Suite 2030
                                                               Chicago, Illinois 60602
                                                               (312) 603-1422