UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DISTRICT

| | | |
|---|---|---|
| ALVARO ALEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | 09 C 6049 |
| | ) | |
| vs. | ) | Honorable Judge |
| | ) | Robert M. Dow Jr. |
| COOK COUNTY DEPT. OF CORRECTIONS, | ) | |
| THOMAS DART, Sheriff Director of Cook County D.O.C. | ) | |
| AVERY HART, Medical Director, Cook County D.O.C., | ) | |
| DAVID FAGUS, Chief Operating Officer of Cermak Health Services of C.C.D.O.C., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

NOW COME the Defendants, THOMAS DART, the Sheriff of Cook County, and SALVADOR GODINEZ, Executive Director of the Cook County Department of Corrections ("CCDOC"), by their attorney ANITA ALVAREZ, State's Attorney of Cook County, through her assistant, Nicholas Scouffas, replies to the Plaintiff's response to Defendants' Motion to Dismiss the Plaintiff's Second Amended Complaint, for failure to state a claim upon which relief may be granted, as follows:

**I. The "Law Of The Case" Does Not Apply To The Present Motion To Dismiss**.

Plaintiff's law of the case argument is misplaced and incorrect. The issues presented and ruled upon in this Court's 1915A review of the Plaintiff's *pro se* Amended Complaint are not analogous to the issues presented in the Sheriff's and Executive Director's Motion to Dismiss. Several differences exist between the Amended Complaint and the Second Amended Complaint that prevent this Court from applying the "law of the case" to the new complaint.

1

When determining if the "law of the case" applies to a current issue, "it is critical to determine what issues were actually decided in order to define what is the 'law' of the case." Gertz v. Robert Welch, Inc., 680 F.2d 527, 532 (7th Cir. 1982). The Prisoner Litigation Reform Act, in §1915A, requires that any complaint filed by an incarcerated Plaintiff, without the benefit of counsel, must be reviewed by the district court at the earliest opportunity to dismiss the complaint in its entirety or in part where the plaintiff fails to state a claim for which relief can be granted. This Court's 1915A review and subsequent order concerning the Amended Complaint was issued on February 9, 2010. (See CM/ECF Document 23, Court's 1915A Review). That order held the Defendants' Motion to Dismiss moot as the Plaintiff, both incarcerated and without counsel, had filed an amended complaint. *Id.* at 2. Further, the order reviewed the new complaint for claims or counts where relief could not be granted. *Id.*

The Defendants' Motion to Dismiss was written in response to the original Complaint filed on September 28, 2009. That complaint did not identify whether the individually *named* defendants were sued in their individual or official capacities. (See CM/ECF Document 1, Complaint, p. 1) The Motion to Dismiss addressed both, though the Defendants noted the ambiguity and assumed *arguendo* that the Defendants were sued in both capacities. (See CM/ECF Document 19, Motion to Dismiss, p. 5). In his Amended Complaint, filed on January 25, 2010, the plaintiff cleared up that issue by clearly indentifying that the defendants were sued in their official capacities only. (See CM/ECF Document 22, Amended Complaint, p. 1). In fact, the body of the Amended Complaint supports these claims as the Plaintiff alleges that the Sheriff's policy failed to protect inmates in general without any allegation of personal knowledge of the Plaintiff and his situation. Id. at 10 – 12.

This Court's 1915A review, though not specifically discussing individual or official capacity

claims, addressed the claims in the Amended Complaint. The Amended Complaint did not include individual capacity claims against Dart, the Sheriff, or Salvador Godinez, the Executive Director. In fact, Godinez and his official office was not named or otherwise included in the Amended Complaint at all. Plaintiff now encourages this Court to use the 1915A ruling for the Amended Complaint as the basis to deny the Motion to Dismiss the Second Amended Complaint.

     This argument has no validity. The Amended Complaint was written and filed by a *pro se* inmate. In *Duncan v. Duckworth*, the Seventh Circuit held that great deference should be afforded to *pro se* litigants when it comes to pleading requirements. 644 F.2d 653, 655 (7th Cir. 1981). Faced with the tension created between the requirements of 1915A and the well established precedent that "*pro se* pleadings be held to less stringent standards than those prepared by counsel," the Court held that less stringent pleading standards should be applied to a pro se litigant's complaint, allowing such a filer to move forward with his complaint unless, *beyond all doubt*, no set of facts exist to support a claim. *Id.*

     Clearly, this Court was working under a different standard for dismissing a complaint on February 9th. Plaintiff now has the benefit of counsel. The pleading requirements as laid out in *Twombly* and *Ashkroft* now apply. This Court's ruling indicated that "at this time" the Plaintiff may proceed on his claims against the Defendants. (See CM/ECF Document 23, 1915 A Review, p. 2). Further, this Court's language that the Defendants' culpability was inferred, "at least at this early stage," on systematic conditions which may be the responsibility of the Defendants refers to this less stringent standard. *Id.* This Court obviously was addressing a *pro se* litigant's complaint. Each case cited by this court for the proposition that the Plaintiff sufficiently pleaded a claim was based on the fundamental deference given to *pro se* litigants. None of these cases actually applied the standards set in *Twombly* and *Ashkroft* to the standard used in this Court's 1915A review.

Beyond the standard for dismissal being completely different, the Second Amended Complaint adds individual capacity claims which were not addressed by this Court's 1915A review. Further, Salvador Godinez requests dismissal of the complaint in both capacities. He was not included in either previous complaint.

The present Motion to Dismiss asks this court to apply the proper standards to the Second Amended Complaint, which was filed by the responding counsel. The "law of the case" is not applicable as the Plaintiff believes. The analysis applied in the February 9th ruling is fundamentally different then the analysis necessary to rule on the present Motion to Dismiss. The Motion to Dismiss should be reviewed under the appropriate standard, where the Plaintiff must plead sufficient factual allegations that demonstrate, if considered true, a right to relief. This motion must be granted and the claims against the Sheriff and the Executive Director need to be dismissed in their entirety.

## II. Plaintiff Has Not Properly Pleaded Individual Capacity Claims Against Thomas Dart And Salvador Godinez

Plaintiff has wholly failed to properly plead individual capacity claims against Thomas Dart and Salvador Godinez because he failed to plead factual allegations that establish personal involvement or liability as to both parties. Plaintiff's Response clearly demonstrates why this failure occurred and why his claims cannot go forward. Both the allegations emphasized and the case law relied upon demonstrate the Defendants' point that Dart or Godinez cannot be held personally liable.

In his Response, Plaintiff again points out the allegations against the Defendants in their individual (and official) capacity, namely: 1) that Dart and Godinez were responsible for the medical care of all inmates, 2) that they knew some inmates were not receiving adequate medical care and 3) that they failed to do anything about it. (See CM/ECF Document 81, Plaintiff's Response, p. 7). Plaintiff believes all that is needed to state a valid claim for personal liability against these individuals are in these three conclusory statements. First of all, Dart and Godinez, as administrators

4

of the Jail, are not responsible for the medical personnel or their decisions. Neither individual controls or directs medical personnel within the Jail. The medical treatment provided to the Plaintiff was not the responsibility of the Sheriff's Department. Plaintiff's factual allegations acknowledge this and yet he sues the Sheriff and the Executive Director personally for his inadequate treatment anyway.

Though Plaintiff attempts to "join" the Sheriff's Department's responsibilities with those of the County's, "well-being" does not equal "medical treatment." There is clearly a division. Combined, the health care people and the security people are responsible for every inmate's "well-being." But what portions of the "well-being" is whose responsibility is clearly defined and exclusive to that party. The portions are actually pleaded in the Second Amended Complaint. If the medical treatment is inadequate and indifferent to Plaintiff's needs, the Sheriff or his Executive Director cannot possibly be held accountable.

Further, the Plaintiff states that all they need to allege is that these individuals were somewhat responsible for potentially systematic conditions in the jail. (See CM/ECF Document 81, Plaintiff's Response, p. 8). This also is wholly incorrect. The "systematic conditions" language was taken from this Court's February 9th order, which, as noted above, involved a completely different analysis and standard. This Court appears to be referencing the *Sanders v. Sheahan*, 198 F.3d 626 (7th Cir. 1999) and *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996), cases. Both those cases, distinguishable from the Motion to Dismiss before the court, dealt with *pro se* litigants and allegations of unconstitutional jail conditions, such as cold temperatures or rodents in the cells. "Systematic conditions" are completely unrelated to the issues at hand.

Moreover, this Court's review indicated that the Amended Complaint would not be dismissed at that point, allowing the named Defendants to "readily identify those who are responsible." (See

5

CM/ECF Document 23, Court's 1915A Review, p. 2). Defendants have tendered hundreds of documents to Plaintiff including medical charts, transportation logs, rosters, hospital logs, ect, which identify hundreds of people that came into contact with the Plaintiff and knew of his situation both in a custodial and medical context. The Second Amended Complaint even identifies numerous Sheriff's deputies by name who allegedly ignored the Plaintiff's needs, but they were never sued. (See CM/ECF Document 52-1, Second Amended Complaint, p. 12). None of them were sued. The Plaintiff apparently believes that if the Amended Complaint passed 1915A review muster then the same standard should be used to deny the Defendant's Motion to Dismiss now.

Further, the very case law used by Plaintiff to respond to the Motion to Dismiss demonstrate the Defendants' right to dismissal. In *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, (7th Cir. 2010), relied on by the Plaintiff for the proposition that a failure to implement a policy to correct constitutional violations is actionable against a policy maker in his individual capacity, the Seventh Circuit reviewed a jury verdict against Cook County and the Sheriff in their official capacities. The Court found no causal link between a Sheriff's custom of an understaffing of officers and the injuries alleged by the Plaintiff. *Id.* at 303. The case has nothing to do with individual capacities, further supporting the Defendants' position that these claims are wholly inadequate.

In *Terry v. Cook County Dep't of Corrections*, 2010 WL 331720 (N.D. Ill. Jan. 22, 2010), this Court indicated that an official who "personally devised" a deliberately indifferent policy might be held liable in his individual capacity. Plaintiff cites this in support of his Second Amended Complaint, which, however, does not identify a "personally devised" policy of any kind within the control of the Sheriff's Department that was a moving force behind the Plaintiff's injuries.

The bottom line in all this is that factual allegations are lacking in the Second Amended Complaint that illustrate a right to relief against Dart and Godinez in their individual capacities.

6

Plaintiff fails to plead a causal connection between *any* policy or failure to provide a policy within the responsibilities of the Sheriff's Department and the injury alleged by the Plaintiff. Further, the factual allegations relied upon by the Plaintiff are either non-factual, conclusory and not to be deemed true or contradictory, as in the DOJ letter. No facts add up to what is required in *Armstrong v. Squadrito* to hold a public official personally liable for a policy decision. The claims of the Plaintiff are mere speculation and must be dismissed.

### III. Plaintiff Has Failed to Properly Plead Official Capacity Claims Against Dart And Godinez

Plaintiff's official capacity claims against Thomas Dart and Salvador Godinez must be dismissed as the Plaintiff has wholly failed to plead any facts that plainly state a policy, custom or practice, attributable to the Sheriff or the Executive Director, which was the moving force behind the alleged injury. Plaintiff merely alleges that a policy or custom should have been in place to ensure the Plaintiff received adequate medical care, even though the Sheriff knew that inmates received inadequate medical care. No other policy, custom or practice is alleged. No allegation exists that the policy or custom was the moving force behind the violation.

Under the above analysis, is the Sheriff liable every time a doctor, hired, paid and controlled by Cook County, ignores an inmate's complaints? Yes. Is the Sheriff constitutionally liable if a doctor at Cermak is guilty of malpractice? Yes. The Plaintiff is attempting to piggyback any injury to an inmate on the shoulders of the Sheriff's Department because the Sheriff knew that inmates did not always receive adequate medical treatment. According to the Plaintiff's manner of thinking, policy makers would be constitutionally liable for the acts of their subordinates, even if the subordinates were not constitutionally liable, as in the case of malpractice.

The problem is the causal link between the "policy" and the injury is far too remote. In other words, the link is merely speculative. No policy, whether in existence or not, attributable to the

7

Sheriff, lead to the Plaintiff's alleged injuries. As the *Thomas* Court stated, "in cases… where individual defendants are commingled with governmental bodies, and the plaintiff alleges a litany of policy failures that interact to create some constitutional harm, it is sometimes easier to obscure the causal links between different actors." 604 F.3d at 306. The Court went on to warn against the broad application of causation principles in a way that would render municipalities vicariously liable for their officers' actions. *Id.* A causal link between the policies of the Sheriff, which again cannot include providing medical treatment, and the Plaintiff's injuries is absent from the Second Amended Complaint.

Additionally, the Plaintiff attempts to blame the discovery process for his failure to know what he is pleading. The discovery process and the Defendants' cooperation and/ or objections to that process have nothing to do with the notice pleading standards and the Plaintiff failures to comply with it.

Again, the only possible "custom" attributable to the Sheriff's Department might concern transporting the Plaintiff to the hospital. However, this has not been properly pleaded. To bolster this position in his Response, the Plaintiff points to the DOJ letter which stated, "medical staff failed to ensure that inmates met scheduled appointments…" (See CM/ECF Document 81, Plaintiff's Response, p. 11). Plaintiff then states the Sheriff's Motion to Dismiss was "demonstrably false" to indicate the DOJ letter did not reference CCDOC's failure to take inmates to Stroger appointments. *Id.* The DOJ letter as quoted says "medical staff." The Sheriff, again, is not in charge of medical staff or their decisions, policies, customs, ect. The letter does not discuss any CCDOC failures to transport inmates to the hospital. The Plaintiff is demonstrably false. Once again, the Plaintiff piggybacks the responsibilities of Cermak upon the Sheriff's Department.

The official capacity claims must also be dismissed. It is wholly unfair to hold the Sheriff liable for policies or customs that are not his responsibility to make. Further, no causal link has been

8

pleaded to connect any policy of the Sheriff to the Plaintiff's injuries. Nor has a policy, custom or practice of the Sheriff's Department been properly plead, identified or otherwise stated which would give notice to the Defendants as to what it is.

**Conclusion**

Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint must be dismissed. Plaintiff's contention that the law of the case applies is without werit as the issues which led to this Court's February 9th ruling are completely different than they are today. The individual capacity claims do not properly state a claim for which relief could be granted because no personally derived policy has been alleged. The official capacity claims must be dismissed as well as the Plaintiff simply attempts to improperly plead that the Sheriff's Department was responsible for polices concerning the Plaintiff's medical treatment and any policies attributable to the Sheriff, such as transportation policies, were not properly plead.

Respectfully Submitted,

ANITA ALVAREZ
State's Attorney of Cook County

By: /S/ Nicholas Scouffas
    Nicholas Scouffas
    Assistant State's Attorney
    500 Richard J. Daley Center
    Chicago, IL 60602
    (312) 603-3304