**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ALVERO ALEMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-cv-6049 |
| | ) | |
| THOMAS DART, ET AL., | ) | Judge Robert M. Dow, Jr. |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Alvero Aleman, originally *pro se*, brings this action against Cook County, Cook County Sheriff Thomas Dart, Salvador Godinez, Dr. Avery Hart, Dr. David Fagus, and Dr. Michael Puisis. Now represented by counsel and on his second amended complaint, Plaintiff's current ten-count complaint alleges that Defendants failed to provide him with adequate medical care while he was a pre-trial detainee in the Cook County Department of Corrections in violation of 42 U.S.C. § 1983. Plaintiff also alleges a state law claim for Indemnification (Count X).

Defendants Dart and Godinez have moved to dismiss Plaintiff's claims against them in their official and individual capacities [64]. Additionally, Defendants Hart, Fagus, and Puisis, have moved to dismiss Plaintiff's claims against them [67]. For the reasons stated below, the Court denies both motions [64 & 67].

**I.    Background**[1]

From December 6, 2006 through August 8, 2008, Plaintiff was a pretrial detainee at the Cook County Jail ("CCJ"). Second Amended Complaint ("SAC") at ¶¶ 5, 15. On October 18, 2007, Plaintiff slipped while descending a flight of stairs and suffered a fracture in his left

---

[1] For purposes of Defendants' motions to dismiss, the Court assumes as true all well-pleaded allegations set forth in the second amended complaint. See, *e.g.*, *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

middle finger. *Id.* at ¶¶ 19, 23. Plaintiff was taken to Cermak Health Services' Emergency Room, where the Cermak medical staff recommended x-rays and pain medication. The emergency room record indicates that Plaintiff was to be transferred to "JSH Hand Clinic" the following day. However, Plaintiff was not taken to Stroger Hospital until six weeks after he broke his hand. Plaintiff alleges that on at least eight separate occasions, Cook County medical personnel failed to transfer him to Stroger Hospital even though he was scheduled for appointments. Furthermore, although surgery was recommended, Plaintiff was never operated on. Plaintiff alleges that due to the actions and inactions of Defendants, Plaintiff did not receive necessary medical attention after the accident, and the injury to Plaintiff's hand was never properly treated. *Id.* at ¶¶ 20-62. As a result, Plaintiff has suffered and continues to suffer considerable pain and has substantially lost the use of his left hand. *Id.* at ¶ 2.

Plaintiff's lawsuit is based on allegations that the care that he received at Cook County Jail fell below the minimum standards of care mandated by the United States Constitution. Plaintiff has alleged that Defendants' failure to enact procedures and adopt safeguards to prevent the denial of adequate medical care to pretrial detainees, such as Plaintiff, directly caused his injuries. *Id.* at ¶¶ 70-77, 79-86, 88-95, 97-104, 106-12, 114-20, 122-28, 130-36, 138-47. The factual bases for Plaintiff's case rests, in part, on a report issued by the United States Department of Justice (the "DOJ Report"),[1] which details a "myriad of unconstitutional practices" applicable

---

[1] The Cook County Defendants request that the Court strike all references to the DOJ Report from the complaint because the report is inadmissible at trial under the hearsay rule and as improper opinion testimony and furthermore is not relevant to Plaintiff's personal experiences or treatment at Cook County Jail. Defendants' arguments lack merit at the pleading stage. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (noting that the purpose of Rule 12(b)(6) is to test the sufficiency of the complaint, not the merits of the case). If the County Defendants wish to limit the use of the DOJ Report at later stages of the case, they may raise appropriate arguments in summary judgment briefing or in a pretrial motion in limine.

to Plaintiff's situation and concludes that the CCJ "is not adequately providing for the safety and well-being of inmates." *Id.* at ¶ 64; DOJ Report, 55-1 at 3 & 5.

There are two groups of defendants in this case. The "Sheriff Defendants" are Tom Dart, the Sheriff of Cook County, and Salvador Godinez, the Director of the Cook County Department of Corrections. The "County Defendants" are Dr. Avery Hart, Medical Director of Cermak; Dr. David Fagus, Chief Operating Officer of Cermak; Dr. Michael Puisis, Chief Operating Officer of Cermak; and Cook County.

## II.     Legal Standard on a Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true, * * * 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at

1949. "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

**III. Analysis**

Section 1983 creates a cause of action against "[e]very person, who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. The § 1983 claims of a pretrial detainee are analyzed under the Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment. *Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir. 2002). Nonetheless, the claim is still "analyzed under the Eighth Amendment test." *Henderson v. Sheahan,* 196 F.3d 839, 844 n. 2 (7th Cir. 1999).

There are two ways in which a government actor may be sued: in his official capacity (*Monell)* or his individual (sometimes called "personal") capacity. Generally, an official capacity suit is brought against a high-ranking official as a means of challenging an unconstitutional policy, practice, or custom. See *Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991). Suing a government employee in his official capacity is akin to suing the entity that employs him and the standard for liability is the same. See, *e.g.*, *Kentucky v. Graham*, 473 U.S. 159 (1985). By contrast, an individual capacity suit requires a showing of personal involvement by the government actor. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

4

### A. Law of the Case

Plaintiff contends that Defendants' arguments are barred by the "law of the case" doctrine because the Court previously conducted a preliminary review of Plaintiff's first amended complaint pursuant to 28 U.S.C. § 1915A. However, the issues presented and ruled on in the Court's § 1915A review of the Plaintiff's *pro se* amended complaint are not analogous to the issues presented in the current motions to dismiss. Several differences exist between the amended complaint and the second amended complaint that prevent this Court from applying the "law of the case" doctrine to the operative complaint.

When determining if the "law of the case" applies to a current issue, "it is critical to determine what issues were actually decided in order to define what is the 'law' of the case." *Gertz v. Robert Welch, Inc.*, 680 F.2d 527, 532 (7th Cir. 1982). Section 1915A of the Prisoner Litigation Reform Act requires that any complaint filed by an incarcerated Plaintiff, without the benefit of counsel, must be reviewed by the district court at the earliest opportunity to dismiss the complaint in its entirety or in part where the plaintiff fails to state a claim for which relief can be granted. The Court's § 1915A review and subsequent order concerning the amended complaint was issued on February 9, 2010. The order found Defendants' initial motion to dismiss to be moot as the Plaintiff, both incarcerated and without counsel, had filed an amended complaint. Further, the order reviewed the new complaint for claims or counts where relief could not be granted. *Id.*

The amended complaint was written and filed by a *pro se* inmate. In *Duncan v. Duckworth*, the Seventh Circuit held that great deference should be afforded to *pro se* litigants when it comes to pleading requirements. 644 F.2d 653, 655 (7th Cir. 1981). Faced with the tension created between the requirements of § 1915A and the well established precedent that

5

"*pro se* pleadings be held to less stringent standards than those prepared by counsel," the Seventh Circuit held that less stringent pleading standards should be applied to a *pro se* litigant's complaint, allowing such a filer to move forward with his complaint unless, *beyond all doubt*, no set of facts exist to support a claim. *Id.*

Plaintiff now has the benefit of counsel, and the pleading requirements as laid out in *Twombly* and *Ashkroft* apply. Furthermore, the Court's prior ruling indicated that "at this time" the Plaintiff may proceed on his claims against the Defendants and that Defendants' culpability was inferred, "at least at this early stage." Each case cited by the Court for the proposition that the Plaintiff sufficiently pleaded a claim was based on the fundamental deference given to *pro se* litigants. Therefore, the Court declines to accept Plaintiff's position that Defendants' arguments are barred by the "law of the case" doctrine.

### B. Individual Capacity Claims

Pretrial detainees have a right to adequate medical care under the Fourteenth Amendment, and those claims are assessed using the same standards for deliberate indifference that courts use for a detained prisoner's Eighth Amendment claims. *Williams v. Rodriguez,* 509 F.3d 392, 401 (7th Cir. 2007); *Cavalieri v. Shepard,* 321 F.3d 616, 620 (7th Cir. 2003) ("The Eighth Amendment does not apply to pretrial detainees, but as a pretrial detainee, [plaintiff] was entitled to at least the same protection against deliberate indifference to his basic needs as is available to convicted prisoners under the Eighth Amendment."). Deliberate indifference has both objective and subjective aspects; the inmate must have an objectively serious medical condition, and the prison official must be subjectively aware of and consciously disregard the inmate's medical need. *Grieveson v. Anderson,* 538 F.3d 763, 775 (7th Cir.2008) (citing *Wynn v. Southward,* 251 F.3d 588, 593 (7th Cir.2001)).

An objectively serious medical condition is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Hayes v. Snyder,* 546 F.3d 516, 522 (7th Cir. 2008). Defendants do not argue that Plaintiff has not met the objective requirement.

To satisfy the subjective prong of deliberate indifference, a plaintiff must allege that the defendants in question were aware of and consciously disregarded the inmate's medical need. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Usually, mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. See *Johnson v. Doughty,* 433 F.3d 1001, 1013 (7th Cir. 2006). However, at the pleading stage, certain denials of treatment can be so blatant to warrant an inference of deliberate indifference. See *Duncan v. Duckworth,* 644 F.2d 653, 654-55 (7th Cir. 1981) (noting that initial failure to properly diagnose an injury may be mere error in judgment, but the failure to schedule surgery for twenty-two months after the need was recognized created an inference of deliberate indifference); see also *Ralston v. McGovern,* 167 F.3d 1160 (7th Cir. 1999) ( "[T]he civilized minimum [concern for a prisoner's medical need] is a function both of objective need and of cost. The lower the cost, the less need has to be shown, but the need must still be shown to be substantial.").

Additionally, a plaintiff must establish that the defendant was personally responsible for a deprivation of a constitutional right. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). "An official satisfies the personal responsibility requirement of Section 1983 if the conduct causing the constitutional deprivation occurs at his direction or with his knowledge and consent." *Id.* "[S]upervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see. They must in other words act either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

7

"In short, some causal connection or affirmative link between the action complained about and the official sued is necessary for § 1983 recovery." Gentry, 65 F.3d at 561.

        1.        *Sheriff Dart and Director Godinez (Counts I and III)*

The Sheriff Defendants contend that Plaintiff has failed to allege any personal responsibility by Dart and Godinez for the alleged denial of adequate medical care and the resulting constitutional deprivation. Plaintiff's complaint and response makes clear that his claims against Dart and Godinez individually are not based on any direct involvement in Plaintiff's fall and subsequent treatment (or lack thereof), but on their alleged failure to enact procedures and adopt safeguards to prevent the denial of adequate medical care to pretrial detainees. The amended complaint alleges that on July 11, 2008, in a report to Dart, the U.S. Department of Justice found that the medical care provided by Cook County Jail fell below the constitutionally required standards of care. The amended complaint further alleges that Defendants failed to implement policies and procedures to cure the health care deficiencies that had been identified prior to July 22, 2008; failed to provide sufficient budgeting to care for Plaintiff and other inmates; failed to provide sufficient staffing to care for Plaintiff and other inmate; failed to train its staff to recognize, diagnose and treat the condition from which Plaintiff suffered; and failed to comply with national standards and the Illinois Department of Corrections Standards for Jails and Lock Up Facilities and Prisons.[2] At least some of those allegations may involve Dart and Godinez.

Thus, the gravamen of Plaintiff's individual capacity claims against Dart and Godinez are their alleged failure to implement policies designed to provide constitutionally adequate

---

[2] These allegations do not refer to Dart specifically. However, at this stage the Court must view Plaintiff's allegations in the light most favorable to him; therefore the Court construes Plaintiff's general allegations against "defendants" as pertaining to Dart.

healthcare to pretrial detainees in the Cook County Jail. At first blush, Plaintiff's claim against the Sheriff Defendants appear to be more akin to an official capacity claim. See *Sanville v. McCaughtry*, 266 F.3d 724, 739 (7th Cir. 2001) ("failure to train claims are usually maintained against municipalities, not against individuals"); *Atkins v. City of Chicago*, 2009 WL 1209032, at *1 (N.D. Ill. May 01, 2009) (noting that Section 1983 individual capacity claim premised on defendant's "asserted failure to train and to institute policies and procedures" resembled an official capacity claim, but assuming *arguendo* that plaintiff could "portray [defendant's] asserted failure to create policies and procedures as his individual conduct," despite the fact that doing so was "counterintuitive"). Dart, as sheriff, and Godinez, as the executive director, would not be directly involved or have knowledge of the day to day operations of dispensing medications or overseeing medical policies such that they could be held personally to have participated in or had knowledge of the decisions that led to the delay in Aleman's medical treatment. See *Duncan,* 644 F.2d at 655. However, based on the allegations in the complaint, Dart and Godinez are involved with and have knowledge regarding how the jail schedules appointments for inmates or transfers inmates to medical facilities, such as Stroger Hospital. While Plaintiff has not made factual allegations that, if accepted as true, establish that Dart or Godinez personally were involved in the medical treatment or course of any treatment for Plaintiff, Plaintiff has accused the jail of failing to transfer him as needed to attend appointments or surgeries.

The Seventh Circuit has stated that "if [a] supervisor personally devised a deliberately indifferent policy that caused a constitutional injury, then individual liability might flow from that act." *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) (emphasis in original). See also *A.M. ex rel. J.M.K. v. Luzerne County Juvenile Detention Center*, 372 F.3d 572, 586 (3d Cir.

2004) (concluding that summary judgment in favor of administrators of juvenile detention center in their individual capacities was inappropriate where record evidence showed that administrators had responsibility for developing the center's policies and plaintiff presented sufficient evidence to present a jury question on whether the Center's policies caused his injuries). Read in the light most favorable to Plaintiff, the amended complaint alleges that Dart and Godinez failed to correct a deliberately indifferent policy that caused a constitutional injury. The Court does not see a material difference between a policymaker's failure to correct an unconstitutional policy and a policymaker's establishment of such a policy in the first place. Therefore, the Court denies the Defendants' motion to dismiss the individual capacity claims against Dart and Godinez.

    2. *Hart and Fagus (Counts V and VII)*

Aleman alleges that he was denied procedures needed to treat his serious medical condition at Cermak, where Hart is the chief medical officer and Fagus was the chief operating officer at the time of Aleman's accident. Aleman alleges that Hart and Fagus were the officials who established the policy of denying or delaying procedures needed to treat serious medical conditions such as Plaintiff's.

As with the Sheriff Defendants, the amended complaint (read in the light most favorable to Plaintiff) alleges that Hart and Fagus knew of the inadequate treatment that inmates were receiving and failed to correct a deliberately indifferent policy that caused a constitutional injury. Furthermore, Defendants' titles and positions alone lead to an inference that they had some personal responsibility for establishing and overseeing the medical policies that governed inmate healthcare. See *Doyle v. Camelot Care Centers, Inc.*, 305 F.3d 603, 615 (7th Cir. 2002) (finding DCFS Deputy Director's position enough to establish inference of personal responsibility for

practices and customs, despite a lack of specific acts by the deputy director); see also *Duncan,* 644 F.2d at 655-56 (reversing dismissal of a hospital administrator from a § 1983 claim of deliberate indifference because his position "justifies the inference at this stage of the proceeding that he does bear some responsibility for the alleged misconduct."). Their high-level positions – Cermak's chief medical officer and chief operating officer – warrant an inference at the pleading stage that they established policies that others followed in withholding treatment. See *Antonelli v. Sheahan,* 81 F.3d 1422, 1428 (7th Cir. 1996). Furthermore, even if these administrators were not responsible for these alleged policy decisions, they are uniquely situated to indicate who is responsible for the delay in Aleman's treatment. See *Duncan,* 644 F.2d at 655 ("[I]f [defendant] later disclaims knowledge and responsibility for the delay in treatment * * * he can readily identify those who were responsible."). Therefore, the Court denies the County Defendants' motion to dismiss the individual capacity claims against Hart and Fagus.

**B.     Official Capacity Claims**

It is well established that a suit against an officer in his official capacity is a suit against the government entity for which the officer works. *Kentucky v. Graham,* 473 U.S. 159, 165-55 (1985); *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008). Plaintiff's suit against Defendants Godinez, Hart, and Puisis in their official capacities is therefore treated as a suit against Cook County and the Sheriff in his official capacity.

To impose § 1983 liability on government entities, Plaintiff must establish the existence of an official policy or custom on one of three theories: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional

injury was caused by a person with final policymaking authority. *Phelan v. Cook County,* 463 F.3d 773, 789 (7th Cir. 2006) (quoting *Roach v. City of Evansville,* 111 F.3d 544, 548 (7th Cir. 1997)); see *Monell v. Dept. of Soc. Servs.,* 436 U.S. 658 (1978). Plaintiff is not required to meet a heightened pleading standard for a § 1983 official-capacity claim. See *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168 (1993); *Simpson v. Nickel,* 450 F.3d 303, 306 (7th Cir. 2006). Thus, Plaintiff need not plead particular facts upon which he bases his claim of an official policy or custom, and a "short and plain statement" that a government entity's official policy or custom caused his injury is sufficient to survive a motion to dismiss. *Id.;* see Fed. R. Civ. P. 8(a)(2).

"The allegation of a single incident of unconstitutional conduct by a municipal employee usually does not establish a sufficient basis for suing the municipality." *Powe v. City of Chicago*, 664 F.2d 639, 650 (7th Cir. 1981). "By contrast, the allegation of a pattern of conduct or a series of acts violative of constitutional rights will in many cases raise an inference of municipal policy." *Id.* at 651. The policy can be viewed as "systemic in nature" if the plaintiff sustains the same constitutional deprivation multiple times – even if those deprivations arise from a single series of facts. *Id.* (holding that a plaintiff who was arrested multiple times on the same vague warrant successfully alleged a *Monell* violation because multiple employees in different departments were involved in failing to create an adequate description four times). Based on the preceding case law, Defendants contend that Plaintiff's complaint contains boilerplate allegations (see *Hossman v. Blunk*, 784 F.2d 793, 797 (7th Cir. 1986)), and that Plaintiff's claim must be dismissed for failure to allege more than a single instance of wrongdoing (see *Sivard v. Pulaski County,* 17 F.3d 185, 188 (7th Cir. 1994)).

Plaintiff's complaint sufficiently alleges *Monell* liability under § 1983. Plaintiff alleges that the customs, policies, and practices of the institutional Defendants caused Plaintiff's harm and that the institution charged with ensuring adequate health care to pre-trial detainees repeatedly and consistently failed to provide adequate health care to inmates with obvious, serious medical needs. Plaintiff describes the alleged failures as including the failure to recognize the risk of harm to inmates, the failure to provide adequate care for obvious conditions, the failure to acknowledge complaints of serious medical needs, and the failure to ensure that inmates with serious medical needs were taken to the appropriate medical facilities. Plaintiff also alleges that Defendants repeatedly violated his constitutional rights: his requests for treatment were repeatedly ignored and they continued to be ignored even after he informed staff that he was still in pain. Furthermore, Plaintiff alleges that the previously-referenced DOJ report found that the medical care provided by Cook County Jail fell below the constitutionally required standards of care, conceivably putting the institution on notice of constitutional violations within the jail. Plaintiff's complaint contains a sufficiently "short and plain statement" that a government entity's official policy or custom caused his injury. When read in a light most favorable to Plaintiff, the facts alleged adequately state a cause of action for § 1983 municipal liability, and Plaintiff's complaint, when taken as a whole, sufficiently alleges the existence of official policies or customs that deprived Plaintiff of his constitutional rights. See *Phelan,* 2006 WL 2690986, at *13 (citing *Roach,* 111 F.3d at 548) (emphasis added).

### D.    Punitive Damages

Plaintiff has withdrawn his request for punitive damages against Cook County and Dart, Godinez, Hart, and Puisis in their official capacities. Plaintiff maintains his claims for punitive damages as to Counts I, III, V, and VII.

**IV.     Conclusion**

For these reasons, the Court denies the Sheriff Defendants' motion to dismiss [64] and also denies the County Defendants' motion to dismiss [67].  The Court strikes Plaintiff's request for punitive damages against Cook County and Dart, Godinez, Hart, and Puisis in their official capacities.

Dated:  November 23, 2010     _____
          Robert M. Dow, Jr.
          United States District Judge